GIBBS VS. DICKSON.

<div style="margin">33  107<br>69  118</div>

1. RECORD : *Demurrer part of; judgment, etc.*
   A demurrer when filed, becomes a part of the record, and a judgment upon it should be shown by a record entry, and not by bill of exceptions.
2. PLEADING : *Complaint.*
   A declaration or complaint on a lease which begins in debt, and concludes in covenant, is not for that reason, demurrable under the code.
3. AGENT, CONTRACT BY : *Right of action on, etc. Private Seals.*
   A lease executed by an agent in his own name, from the body of which it is obvious that he intended to bind his principal and not himself, will be treated as the contract of the principal, and he may maintain an action on it. The distinction at law between sealed and unsealed instruments in this respect, has ceased to exist since the abolition of private seals.
4. PLEADING : *Joinder of causes of action.*
   Under the code, a count or paragraph on a written lease, may be joined with one on a verbal account stated.
5. EXCEPTIONS : *Motion for new trial, etc.*
   No advantage can be had of exceptions reserved at the trial and not made grounds of a motion for new trial.
6. SET OFF : *Practice on failure to reply to plea of.*
   Upon the failure of a party to file a reply to a plea of set off, the adverse party should move for judgment upon the plea for want of a reply; and when he fails to do so, but goes into trial as if the issue were made up, he will not be allowed the advantage of it in this court.

APPEAL from *Crittenden* Circuit Court.

Hon. L. L. MACK, Circuit Judge.

*M. Peters*, of Memphis, for appellant.

*Lyles*, contra.

ENGLISH CH. J. :

This action was brought in the Circuit Court of Crittenden County by William Dickson, against Thomas Gibbs, and

founded upon the following lease, which is set out in the complaint, made a part of, and filed with it:

"COUNTY OF CRITTENDEN, STATE OF ARKANSAS.

This agreement and contract made this 18th day of February, 1874, between John L. Strong acting for William Dickson of the County of Colbert, in the State of Alabama, party of the first part, and Thomas Gibbs, of the County of Crittenden, Arkansas, of the second part, witnesseth: That said Strong for said Dickson, hath this day rented, and by these presents doth rent, unto the said Thomas Gibbs, his plantation known as *Holly Grove*, in said County of Crittenden, to farm for the year 1874, the said Dickson renting, and the said Gibbs accepting the said plantation on the following terms and conditions:

*First*—That this agreement is confined to the year 1874, and expires on the 31st day of December, 1874, at which time possession shall be given to William Dickson. A notice of ten days shall be given to said Gibbs requiring possession. If said Dickson shall rent the said lands after the year 1874, then he shall name a price to be paid as rent for the same, and the said Gibbs shall have the refusal of said plantation at the price named.

*Second*—For the use of the plantation for the year 1874, the said Gibbs agrees to make the following improvements, to-wit: a fence around the plantation ten rails high, the rails to be good substantial rails. On the front of the plantation, commencing at the corner of said fence on the road leading to Malone's, which is the corner nearest the Malone plantation, and ending at the corner below the old Hine house, which corner is that nearest the Ball place, the said Gibbs shall place stakes and riders in the manner customary in the country, the stakes to be well and firmly set in the ground. If the old cotton press now on the place can be repaired at a cost of $50,

then the said press shall be repaired by the said Gibbs, otherwise he may provide his own press and remove the same at the expiration of his lease. The said Gibbs agrees to build the chimneys to all the cabins above the roofs. Whatever additional improvements may be necessary to the comfort and convenience of the tenant, will be at his own expense, and not chargeable to the landlord. The said Gibbs agrees to cultivate all the land which has heretofore been in cultivation, except such as he may be prevented from cultivating by reason of high water overflowing it; to clear the same of bushes and grubs that have grown upon it by reason of the neglect of former tenants, and to leave the same in good condition for another crop. The said Gibbs further agrees to pay all taxes that may be assessed upon the lands of William Dickson lying in township 8 south, range 8 east, for the year 1874, which may be due and payable in the year 1875, and to preserve the improvements from destruction and decay, except such as may result from wear and use, and to turn them over in good order at the expiration of this lease. It is mutually agreed between the parties that in the event the said Gibbs shall not have gathered and removed his crop at the expiration of his lease, he shall be allowed a reasonable time thereafter for that purpose.

In testimony whereof, the said parties of these presents have hereunto set their hands and seals the day and year first above written.

<div style="text-align:right">JOHN L. STRONG, [SEAL.]<br>For William Dickson.<br>THOS. GIBBS. [SEAL.]"</div>

The complaint is in substance as follows:

"*First Paragraph*—The plaintiff, William Dickson, states that the defendant, Thomas Gibbs, is justly indebted to him in the sum of $1000 damages, sustained by the plaintiff for

and on account of the non-performance of the obligations, stipulations and covenants on the part of said defendant of the certain written contract, covenant and agreement made and entered into by and between the plaintiff and defendant, at etc., on the 18th day of February, 1874, (the original agreement is herewith filed marked exhibit A, and made part of this complaint,) in and by which agreement and covenant in writing, the said defendant rented and leased from the plaintiff (through John L. Strong, plaintiff's agent,) the certain plantation of the plaintiff known as the *Holly Grove* plantation in said county, to farm the same for the year 1874, the said defendant and plaintiff covenanting and agreeing upon the following terms and conditions, to-wit:

(Here the stipulations of the lease are copied.)

" *Second Paragraph*—And the plaintiff avers that under and in virtue of said covenant in writing the said defendant did enter in and upon the lands so leased, and did use, have and enjoy the same for the whole length of time specified and agreed upon, and that plaintiff on his part hath in all things performed his part of the covenants aforesaid.

" *Third Paragraph*—But the plaintiff avers that the said defendant hath not kept and performed his part of the covenants and stipulations aforesaid, but on the contrary the said defendant hath failed, neglected and refused to keep and perform his covenants and agreement, and hath broken the same in this, that the said defendant failed, refused and neglected to make the fence above stipulated for, and to place the fencing around the place as by contract he was bound to do ; and the said defendant hath also failed to clear the land of bushes, grubs, etc., and to cultivate the land in the manner stipulated for, together with other and further breaches of his said covenant by non-performonce of the same, by reason of all of which the plaintiff hath sustained damages to amount of

$1000, which amount the plaintiff believes he ought to recover of and from the defendant.

"*Fourth Paragraph*—And the plaintiff further states, that after the making of said special contract in writing, and after the said defendant had used, occupied and had the benefit of said lands and premises under the lease and covenant, to-wit: on the——day of———————, 1875, he, the said plaintiff, by John L. Strong, his agent, and the said defendant·did settle and adjust all of the said matters above complained of, which resulted in a balance due the plaintiff of the sum of $1000, which the said defendant agreed to pay, but afterwards refused. And so the plaintiff avers that there is due him from the defendant the sum of $1000 as aforesaid, for which amount he prays judgment against the defendant, and for general relief," etc.

The defendant demurred to the complaint, assigning the following causes of demurrer:

*First*—The complaint does not state facts sufficient to constitute a cause of action.

*Second*—The contract sued on is too indefinite and uncertain, and without consideration.

*Third*—The second count is irregular and insufficient.

There is a record entry in the transcript, showing that the demurrer was taken up and argued, but not how it was disposed of. It only appears from the final bill of exceptions taken on the overruling of the motion for a new trial, that the demurrer was overruled.

The defendant filed an answer with two paragraphs:

*First*—Covenants performed.

*Second*—Set-off, alleging that plaintiff was indebted to him in the sum of $1,541.85, over and above his indebtedness to plaintiff, as per bill of particulars filed.

The cause was finally submitted to a jury, and verdict rendered in favor of plaintiff for $498.

Defendant moved for a new trial on the grounds :

"*First*—Error in amount of recovery, the same being too large.

"*Second*—Verdict not sustained by sufficient evidence, or contrary to law."

Motion overruled, final judgment for plaintiff, bill of exceptions, and appeal by defendant.

I.   The overruling or sustaining of a demurrer to a complaint, or answer, should be shown by a record entry.   The demurrer, when filed, like other pleadings, is part of the record, and the judgment of the court upon it should be entered of record, and not left to be shown by a bill of exceptions.

No doubt the court below overruled the demurrer to the complaint, as stated in the bill of exceptions, and the clerk neglected to make the proper record entry, showing it, or failed to copy the entry into the transcript sent here on appeal.

The complaint is arbitrarily or fancifully paragraphed.   It contains, in the Code sense, but two paragraphs, one upon the lease, and the other upon an alleged account stated between the parties.

The paragraph (or count, to use the Common Law and better phrase), upon the lease, sets out and exhibits the instrument, alleges the performance on the part of the plaintiff, assigns specific (as well as general) breaches on the part of the defendant, and lays the plaintiff's damages at $1000.

The objection that it commences in debt and concludes in covenant, is not valid under the Code pleading, which abolishes the Common Law classification of actions.   It alleges substantive facts to show a cause of action.

The specific objections taken in the demurrer, that the contract sued on is too indefinite and uncertain, and without consideration, are not well founded.

The lease expresses very clearly the subject and terms of the contract, and the use of the plantation was the consideration for the defendant's covenants to make improvements, etc.

The lease sued on was executed in the name of the agent for the principal, and a deed so executed might not be valid at law as the deed of the principal. Story on Agency, 8 ed., sec. 148, and notes. *State* v. *Jennings*, use, etc., 10 Ark., 446.

But the rule is not so strict in relation to unsealed instruments. If it can upon the whole instrument be collected that the true object and intent of it are to bind the principal and not the agent, courts of justice will adopt that construction of it, however informally it may be expressed. Story on Agency, 8th ed., sec. 154.

In this case it is manifest from the body of the lease, that the plantation belonged to Dickson, and that Strong, in executing the lease, was acting as agent for him, and intended to bind him, and not himself, and private seals being abolished, the lease was not of a higher grade, or more solemn in its character than a parol instrument.

Moreover, the complaint shows that the contract was executed on the part of Dickson. Gibbs was let into the possession of the plantation under the lease, and enjoyed the use of it for the year and this suit is brought against him by Dickson for failure to perform the covenants which he assumed on his part in the lease.

By the Common Law the plaintiff would have been obliged to bring the action of *covenant* upon the lease, because it was under seal, and the damages of the plaintiff for the failure of the defendant to perform his covenants, unliquidated. And in such action he could not add a count upon an *account stated*,

because covenant would lie only upon contract under seal, and not upon a verbal admission of a sum due by the defendant. 1 Chitty Plead., 199–358.

Private seals being abolished, assumpsit would lie on the lease in question, and a count upon an account stated might well be added, if the Common Law system of pleading prevailed in this State ; and it surely might be done, as in this case, under the Code pleading.

The count upon the lease is upon a written contract, and the count upon the account stated, upon a verbal contract or admission of the defendant, that a sum of money was due by him to the plaintiff ; and the counts (or paragraphs, to use the Code term), may be joined in the same complaint. Gantt's Digest, sec. 4550.

The count upon the account stated is in good enough form.

It follows that the court below did not err in overruling the demurrer to the complaint.

II.    The bill of exceptions shows that during the trial, appellant excepted to several rulings of the court, on objections made by him to the admission of evidence offered by appellee, and to the giving of one of the instructions to the jury, moved on behalf of appellee, but none of these exceptions were made grounds of the motion for a new trial, and hence by a well settled rule of practice, were waived or abandoned. *Graham* v. *Roark*, 23 Ark., 19.

III.    The evidence introduced on the trial is conflicting, both as to the claim of the appellee and the set-off of appellant.

The testimony of appellee and his witnesses, conduced to prove that appellant failed to make the improvements which he covenanted in the lease to make as compensation for the use of the plantation for the year 1874, and the probable value of such improvements.

The testimony of appellant and his witnesses tended to prove that the improvements were made, etc.

Gibbs vs. Dickson.

It appears from the evidence that appellant rented of appellee the Holly Grove plantation and other lands, called the Rhea place, for the year 1875..

The bill of particulars filed with the plea of set off was made up principally of charges for repairs and improvements made by appellant upon the two places during the year 1875, and the bill of exceptions states that he proved the items charged in the bill of particulars.

On the contrary appellee introduced evidence conducing to prove that he rented the two places to appellant for the year 1875, for an agreed price to be paid in money, and made no agreement to pay for improvements or repairs; and that the parties accounted together about the rents for the year 1875, and the charges made against the rents, and it was proved that there was a balance due the appellee.

It may be that the preponderance of evidence was against the verdict, but it was not without evidence to sustain it, and it was the province of the jury to judge of the weight of the evidence, and the Circuit Judge, who saw the witnesses, and heard their testimony, having refused a new trial, it is the well settled practice of this court not to overrule his judgment in such cases.

IV. We have above disposed of all the points made in the court below, and properly reserved of record, but the counsel for appellant makes the point here, for the first time, that appellee did not file any reply to appellant's plea of set off in the court below, that the plea stood confessed, and that appellant was entitled to judgment upon the plea.

If appellee did not in fact reply to the plea of set off, or take issue to it in short upon the record by consent, which is frequently done in our practice, appellant should properly have moved for judgment upon the plea before going into a trial before the jury. ( *Wing & Co.* v. *Dugan*, 8 Bush, 583,

*Scott & Co.* v. *Wilson,* 2 Ib., 603.)    Had he made such motion, the attention of the counsel for appellee would have been called to the fact that no reply was in, if such was the fact, and he, by permission of the court, might have cured the omission.

The parties manifestly went into the trial under the impression that the issues were made up ; the bill of exceptions taken by the counsel for appellant, after stating the pleas interposed by appellant, states that issues were taken to the several pleas, and the cause submitted to a jury, etc.    Both parties introduced evidence as to the claim of appellee, and as to the set off of appellant, and instructions were asked as to both, all showing that the plea of set off, as well as the claim of appellant was regarded by the parties as at issue.

Moreover it appears by a record entry that during the pendency of the cause in the court below, papers in the cause were lost or mislaid, and by consent, the parties were given leave to supply them.    What particular papers were supplied, under the order, does not appear.    It may be that a reply to the plea of set off was in, and lost, or mislaid and not supplied.

Be this as it may, it would be bad practice to permit appellant to avail himself of the want of a reply when, after having failed to move for judgment in the court below on the ground that his plea of set off was confessed by failure to put it in issue, and going into trial, and making a contest before the court and jury as if the plea was at issue.    Such a surprise in practice is not to be favored here.

Upon the whole record the judgment must be affirmed.