BRUNSWICK-BALKE-COLLENDER COMPANY *v.* CULBERSON.

Opinion delivered January 21, 1929.

*Silas W. Rogers,* for appellant.

MEHAFFY, J. Appellant brought this suit in the Union Circuit Court in replevin, alleging that it was the owner and entitled to the possession of certain described property of the value of $1,317.58; that Culberson had possession and unlawfully detains same, after demand

for the property. Prayer was for the recovery of the property, costs, etc. Proper affidavit was made for the delivery, bond was filed, and thereafter appellee filed bond to retain the property.

Appellee filed an answer, denying the allegations of the appellant's complaint, and also filed a counterclaim. In his answer and counterclaim appellee stated that he made a contract for certain pool tables and equipment, agreeing to pay $2,616.80, that he paid cash thereon the sum of $695.80, and then paid a number of installments. He also alleged that the appellant was to carry fire insurance, and was to have it written and taken out for a period of 17 months, the time in which appellee was to pay for the property; that appellee was to pay the premiums, and that the change of agreement for the appellant to take out the policy was indorsed on the policy and appellee charged with the first year's premium. He alleged that he relied on the appellant keeping the insurance in force, and that appellant, without notice to him, failed to keep the insurance in force, and that the property was destroyed by fire, resulting in a loss to appellee of $2,600; that the fire occurred and said property was destroyed within the time in which appellant had agreed to keep the property insured against loss by fire. Appellee prayed judgment against appellant for $2,600, and that, if appellant secured judgment against appellee, such judgment or claim against him be set-off against any sum due the appellant.

To this cross-complaint appellant filed a reply, and admitted that the contract was entered into between the parties, but denied that an oral contract was entered into varying the terms of the written contract, and appellant denied all the material allegations in appellee's cross-complaint.

The case was tried by the jury, and a verdict returned in favor of the appellee, and judgment was entered accordingly. Motion for a new trial was thereafter filed by appellant, which was overruled by the

court, and the case is here on appeal.    Appellee has filed no brief.

The evidence showed that the parties entered into a written contract by which the appellant sold to the appellee certain property described in the contract for the sum of $2,616.80, and that of this amount $695 was paid at the time the contract was entered into, and that the balance was to be paid in monthly installments, with interest, and that said payments were evidenced by seventeen promissory notes of even date with the contract.    It was agreed in the contract that the title to the property sold should not vest in the vendee until paid for in full.    The contract also provided for appellant repossessing itself of the property, and that, when this was done, it should advertise and sell said property.    It was further provided that the amount realized from the sale should be applied first to the remaining indebtedness and the expenses of sale, and that whatever remained should be turned over to the appellee, or sufficient to equal the amount he had paid to the appellant.    It also provided that the appellant might purchase at the sale.    It was also provided in the contract that the injury or destruction of the property would not operate to release the appellee from the payment nor from any conditions in the agreement.    The contract provided also that the appellant might take any legal action which it deemed fit for the recovery of the money agreed to be paid under said contract.    It was also stipulated that the appellee agreed to insure said property promptly against loss or damage by fire, in the sum of $2,500, and that the policy should be payable to appellant as its interest might appear, the policy to be delivered to it as soon as the insurance was effected.    It was also provided that, in case appellee neglected to insure said property within ten days after the receipt of the property, appellant might effect such insurance and charge it to the appellee, and that it should be payable on demand.

After the suit was begun and appellee had given. bond to retain possession of the property, after he had filed his answer and cross-complaint; but before the trial of the case, the property was destroyed by fire.

Appellee testified that, at the time of the sale, the insurance was discussed, and that he told the representatives of appellant that he wanted the contract of insurance to be a long contract, that is, he wanted the insurance to be for the life of the contract, and he testifies that this was the agreement. He also told the appellant's representatives that he could not get insurance at Norphlet, and that they were to carry it, that this was the understanding, and that appellee was to pay the premiums, but appellant was to procure the insurance, and appellee says that appellant was to carry the insurance for as long as the contract went, for seventeen months, and that before the seventeen months had expired the property was destroyed by fire.

The appellant contends that the insurance was to be for twelve months only, and not for the life of the contract, and it did procure a policy of insurance for twelve months, and the property burned after the expiration of twelve months. Appellant also disputes the testimony of appellee with reference to the insurance.

Appellant's first contention is that the court erred in refusing to direct the jury to find for the appellant, and bases its contention upon the following reasons: First, in permitting the appellee to present oral testimony to alter or vary a written contract. We cannot agree with appellant in this contention. The oral testimony did not alter or vary the terms of the written contract in any way. The written contract itself provided, of course, that the purchaser should have the property insured, but that, if he did not have it done, then the vendor might have it insured and the purchaser pay the premiums; but the oral testimony shows that appellee could not get insurance on the property in Norphlet, and that it was agreed between the parties at the time that the appellant would have the property

insured under a blanket policy, and that appellee would pay the premium. The parties had the right to make this agreement, and it did not vary the terms of the written contract. The written contract provides:

"Vendee agrees to insure said property, promptly upon receipt thereof, against loss or damage by fire, in one or more solvent insurance companies, to be approved by the vendor, in the sum of $2,500, paying the expenses thereof, and making them payable to appellant as its interest may appear, the said policy or policies to be delivered to the vendor as soon as said insurance is effected. In case the vendee fails or neglects to procure such insurance within ten days after the receipt of the property above described, then vendor may effect such insurance, and any premiums therefor shall be and become a debt payable under this contract on demand."

The vendee not only failed to procure the insurance, but told the vendor at the time of the contract that he could not procure the insurance. He then failed to procure the insurance, and the appellant itself procured it. In fact, the written contract, instead of being altered or contradicted by the oral contract testified about, provided for the very thing the parties did. It provided for the insurance policy to be taken out by the appellant, and be paid for by the appellee.

Appellant calls attention to the case of *Harrower* v. *Insurance Company of North America,* 144 Ark. 279, 222 S. W. 39, and quotes from that opinion. In that case, however, the court holds that prior oral agreements and antecedent writings forming a part of the negotiations for a contract become merged in the subsequent written contract, and are incompetent as evidence for the purpose of enlarging the scope of the written contract. But the parol contract did not enlarge the scope of the written contract. It did not alter or vary its terms in any way.

It is next contended by appellant that the court erred in permitting appellee to interpose a set-off or counterclaim in a replevin suit, where damages were not

asked. The cases, however, referred to by appellant are cases where the only issue was the title to the property. Appellant calls attention to a number of authorities to the effect that a counterclaim is not allowable in actions for replevin, but only in actions for money. This is the doctrine announced by this court in the case of *Smith* v. *Glover*, 135 Ark. 531, 205 S. W. 891, where the court said:

"We do not, however, share the views of learned counsel for defendants in the contention that the statute allows a counterclaim in an action other than one for the recovery of money. In the very nature of the subject the term 'counterclaim' means a cross demand which may be asserted in liquidation or reduction of the claim made by the plaintiff, and this is necessarily limited to actions for the recovery of money, for there could be no such thing as a cross demand asserted against a cause of action for the recovery of specific property. A counterclaim is defined to be 'a claim presented by a defendant in opposition to or deduction from the claim of plaintiff.'"

Appellant's action in this case was in form an action in replevin, but it was in reality an action to recover the balance due on the purchase price of the property, which appellant alleged to be $1,317.58. It sued to recover the property for the sole purpose of selling it to pay this debt. The contract itself provides that, if the appellant takes the property, he shall sell it, and first pay the balance of the indebtedness and the expenses and then turn the balance over to the appellee.

Again, in suits in replevin for property under conditional sales contracts the plaintiff must show a balance due on the contract to entitle him to recover. Our statute provides:

"In any action in a justice court or circuit court of this State, where it is attempted to foreclose any mortgage, deed of trust, or to replevy under such mortgage, deed of trust, or other instrument, any personal property, the defendant or defendants in said action shall

have the right to prove or show any payment or payments or set-off under such mortgage, deed of trust or other instrument, and judgment shall be rendered for the property or the balance due thereon, and the defendant may pay the judgment for the balance due and costs within ten days, and satisfy the judgment and retain the property." Crawford & Moses' Digest, § 8654a.

It will be noticed that the statute itself authorizes a set-off. The reason for this is that the plaintiff is seeking to recover the balance due on the property rather than the property itself, although the form of his action is replevin. If one brings a suit in replevin claiming to be the owner of the property, and the defendant claims the property, and it is not a question of indebtedness from the defendant to the plaintiff for the purchase price of the property, the issue is simply the possession of the property. Then, under the decisions of this court, a set-off is not allowable. But, where replevin is brought for the purpose of collecting the balance of the debt due, either under a mortgage or other instrument, the defendant has a right to set-off any claim he may have against the plaintiff. The statute expressly so provides. So we hold that, under the statute, wherever one seeks to replevin property under a mortgage or other instrument like a conditional sales contract, the purpose being to collect a debt, the defendant may set-off any claim he has against the plaintiff, or may file a counterclaim, while in actions of ordinary replevin, as this court has already said, a counterclaim is not allowed. But, if the statute did not authorize a set-off or counterclaim, it would be admissible in a case of this kind, for the reasons we have mentioned; that is, if it is a suit to recover a debt, and replevin is brought for that purpose, the party bringing the suit must show indebtedness, and if the other party has a claim against the party bringing the suit, equal to or greater than the plaintiff's claim, then the plaintiff would not be entitled to recover the property.

In a suit in a Virginia court, where a distress warrant had been issued and levied and a forthcoming bond had been given, the Virginia court said:

"It having been agreed between said plaintiff and said defendants that any such debt might be urged by way of offset to the said bond, if evidence of such debt should be admissible, and the plaintiff thereupon objecting to the admissibility of the said evidence, the court rejected it, upon the ground that the defense of such offset was inadmissible in a motion upon a forthcoming bond taken under a warrant of distress. To this ruling of the court a bill of exceptions was taken, which presents the only question which we have to decide in this case. The question, as already shown, is whether an offset, or a set-off, as it is more commonly called, is a good defense to a motion on a forthcoming bond taken under a distress warrant."

The court then discusses the action of replevin and the statutes and the English cases which hold that a set-off could not be pleaded to an avowry for rent. The court continued:

"In a suit for any debt the defendant may, at the trial, prove and have allowed against such debt any payment or set-off which is so described in his plea, or in an account filed therewith, as to give the plaintiff notice of its nature, but not otherwise."

"The reasons on which the English decisions, that a set-off is not a good defense to an avowry for rent in an action of replevin, were founded, is that the statutes make mention only of mutual debts; therefore the demand, as well of the plaintiff as of the defendant, must be a debt; and a set-off is not allowed in actions for torts, as upon the case, trespass, replevin, or detinue. In other words, the action of replevin was regarded in this respect as an action *ex delicto,* as it certainly is in form, and so not within the terms of the statutes. Our courts, on the other hand, regarded the action, after the defendant's avowry for rent, as in substance an action *ex contractu* by the defendant against the plaintiff for

the rent, and as therefore coming within the true intent and meaning, if not the literal terms also, of the act." *Allen* v. *Hart*, 18 Grattan's Reports (Virginia), 722.

The action in the instant case, as we have said, is in form an action in replevin, but in substance it is an action in debt.

In a case decided by the Supreme Court of Pennsylvania it was held that the defendant could not interpose a counterclaim in an action because the property in question was rented to the defendant, with certain stipulations in the contract, among others, providing that, at the end of the term for which the boiler and engine were rented, it should be restored to the owners, and that, if the defendants would comply with all the conditions of the contract and make all the payments therein stipulated when due, they might, and not otherwise, purchase at their option said boiler and engine at the end of the time for which it was rented. The law is well settled in Pennsylvania that a set-off cannot be pleaded and allowed in replevin. The court said:

"The transactions between the knitting company and Deibert, and the latter and Sprenger, did not involve a sale of a chose in action. The legal title to the boiler and engine, with the right to the rental and to take possession in case the defendants failed to pay, was what each of the purchasers in turn acquired." *Eureka Knitting Co.* v. *Snyder*, Penn. Superior Court, vol. 30, p. 336.

It will be observed upon reading the above case that the court expressly distinguished the above case from a case where there was a conditional sale. Of course a replevin of property the defendant had not purchased but had merely rented would not be such a case as would entitle the defendant to file a counterclaim. The plaintiff in the above case was the absolute owner of the property, had never sold it. The party was not seeking in any way to recover the debt, but the property. In the instant case the contrary is true. While replevin is prayed to recover possession of the property, it is only for

966

the purpose of collecting the debt, and we therefore conclude the counterclaim was proper.

Again, if the defendant has a counterclaim, whether growing out of contract or tort, and could not file a counterclaim or set-off in a case like this, then there would necessarily be at least two suits, when the whole matter could be settled in one. There is no reason why a counterclaim is not proper in a replevin suit where it is simply replevin in form and is an action in debt in reality.

We find no reversible error, and the judgment of the circuit court will be affirmed.