KERN-LIMERICK, INC. *v.* MIKLES.

4-9217                                                          230 S. W. 2d 939

Opinion delivered June 19, 1950.

*Barber, Henry & Thurman* and *R. C. Limerick, Jr.,* for appellant.

*Charles I. Evans,* for appellee.

ED. F. MCFADDIN, Justice. Appellee, Mikles, recovered judgment against Kern-Limerick, Inc. for $6,000, being $2,000 damages for defective repair of a WK[1] tractor, and $4,000 damages for fraudulent misrepresentation regarding an HD[1] tractor. To reverse that judgment there is this appeal.

## FACTS

Mikles—a resident of Booneville, Arkansas—purchased a secondhand WK tractor for $700 in July, 1947; and at his order Kern-Limerick, Inc.—a large road implement firm, maintaining repair departments, etc. in Little Rock, Arkansas—undertook to repair and re-

[1] These were the initials used by the witnesses in describing the tractors; and we use the same initials for convenient identification. To describe the tractors in detail as to make, etc., would be of no benefit to this opinion.

condition the tractor and add a "dozer attachment" thereto. Kern-Limerick's bill was $4,403.13, of which Mikles[2] paid $2,000 in cash, and the balance was charged to him on open account.

While in the course of having the WK tractor repaired, Mikles saw that Kern-Limerick had for sale a secondhand HD tractor; and Mikles agreed to purchase this for $5,300, being $1,000 in cash and $4,300 on deferred payments. The contract of sale, signed by Mikles, described the tractor as being secondhand, and stated the deferred payments to be due: $500 on November 10, 1947, $500 on December 10, 1947, $660 on January 10, 1948, and a like sum each month thereafter until the full indebtedness and interest be paid. The contract also contained these provisions:

"The undersigned hereby acknowledges receipt of a full and true copy of this order and that no statements or representations have been made either verbally or written which are not expressed herein.

. . . . . . .

"It is expressly understood and agreed that the title to the above described goods shall be retained in Kern-Limerick, Inc., until the entire purchase price as above set out has been fully paid in cash."

Mikles used the two tractors in constructing water ponds for farmers who were cooperating with the Government "Triple A" program; and also he used the tractors for pulling trees, building roads and other purposes. Both tractors gave Mikles considerable trouble by breakdowns, which began the first week of use and continued at frequent intervals. Mikles regularly notified Kern-Limerick of the breakdown of each tractor, and that company regularly sent a mechanic with parts to make the necessary repairs. The breakdowns and repairs continued; and in January or February, 1948, Mikles, after returning the WK tractor for further repairs, had a telephone conversation with Kern-Limerick, in which he asked for an adjustment on the amount

[2] For clarity we will refer to the parties by name, rather than by status in the litigation.

charged him for repairs. On February 4, 1948, Kern-Limerick wrote Mikles a letter containing, *inter alia*, the following paragraph:

"Your open account on our books as of January 31, 1948, totals $4,029.75 which includes the balance of $2,403.13 on the WK Tractor and Dozer, and repair and supply invoices of $1,626.62. In addition, you owe on the HD-7 Tractor notes totaling $4,300.00."

In the letter, Kern-Limerick offered to cancel $1,146.40 of the repair account of $1,626.62 and then stated:

"Since you sent your WK into us, we have taken the engine down and it is very apparent that you either have not used the right oil or have neglected keeping it properly oiled. We are having a new crank shaft installed and believe the best sale that can be made will be about $3,000.

"If you want us to do so, we will try to sell it for $3,000 and apply it to your account which stands as follows with the adjustments made above:

"Balance on WK Tractor.............................................................$2,403.13
"Repairs and supply account...................................................... 480.22

$2,883.35
"Allowance for Tractor.................................................................$3,000.00

"Your balance................................................................................$ 116.65
"Balance due on your HD-7........................................................$4,300.00"

Mikles wrote Kern-Limerick on February 6, 1948, and had a telephone conversation; and then on February 18, 1948, Mikles again wrote Kern-Limerick:

"The WK tractor should be worth as much as it cost to have it repaired as the tractor is not figured in at all, so try to get $4,000 for it and that will let me get along a little better on the HD-7 and will say to you just as soon as my tractor can go to work I will mail you a payment and will clean up as soon as I can. Thanking you for past favors and service."

Kern-Limerick repaired the WK tractor at a cost of $200 and sold it for $3,100; and allowed Mikles a credit of $3,000 for the sale. Mikles never complained in writing of the sale price; and in his pleadings stated that the sale price was $3,000. At the trial he sought to claim that he should have received $4,000; but it was stipulated (as hereinafter quoted) that the entire balance of $4,300 was due and unpaid on the HD tractor.

Mikles continued to use the HD tractor, but made no payments. Kern-Limerick insisted on payment; and on July 8, 1948, Mikles wrote Kern-Limerick a letter which we copy in full:

"As per your request, this letter will explain the tractor condition and the way I can finish paying for the tractor as outlined over the telephone.

"I bought the tractor last summer and promised to pay for it by the month as I had all the work I could do. I have had too much trouble with this tractor and have been down so much with it, I could not make the payments. I have got the tractor in good condition now. Your man thinks it should go on and work which I think it will. I have all the work I can do this summer if this tractor will just stay running. The last few days I have been out about one thousand dollars on this tractor. I had an agreement with Mr. Limerick by telephone to pay cash for the work I would have done on the tractor, and as soon as I could make a payday with it I would start my payments and get it paid out. I have had the service man here twice before this time and am just now getting started. I am on a job which consists of three parts, and as I complete each part I can draw my money. I lack about three working days having the first part done. As soon as this is done I will mail you some money, and as fast as I can I will pay this tractor out. I have hit it pretty hard with this tractor not working any better than it has. This was the way I was going to pay for it and every time your man came to work on the tractor I had my operator help him, so you can see I have had a costly thing and haven't had anything coming in to speak of.

"Mr. Kern, I want to pay for this tractor and will do so just as fast as I can.

"Thanking you for your past services and being lenient with me."

After receiving that letter, Kern-Limerick delayed until July 22nd; and receiving no payment, filed replevin suit and repossessed the HD tractor under the title retaining contract. Mikles then filed counterclaim,[3] alleging (a) that the repair job on the WK tractor was defective, and (b) that Kern-Limerick had defrauded him in his purchase of the HD tractor by falsely representing it to be in good condition, etc. Mikles claimed damages of the (a) amount paid workmen when tractors were broken, (b) cost of repairs, and (c) profits he would have made from the use of the tractors if they had not broken. Kern-Limerick denied the allegations of the counterclaim and pleaded, *inter alia*:

". . . That the defendant has waived any claim, action or cause of action which he had or might have had against the plaintiff."

At the trial it was stipulated (1) that the entire series of notes—totaling $4,300—for the HD tractor was past due and unpaid and also (2)

"It is further stipulated that under the above statement of facts the plaintiff at this time is entitled to a judgment against the defendant for possession of the tractor and equipment and that the only matter in issue is the question of damages set up by Mikles in his cross complaint."

As previously stated, the judgment—based on the jury verdict—was for Mikles for $6,000 on his counterclaim; and this appeal ensued.

## OPINION

Many questions are presented in the excellent briefs; but we find it unnecessary to consider any of them except

---

[3] *Brunswick* v. *Culberson*, 178 Ark. 957, 12 S. W. 2d 903, and *Galloway* v. *Puryear*, 179 Ark. 524, 16 S. W. 2d 1000, are cases holding that a counterclaim may be filed in a replevin action.

Kern-Limerick's request for an instructed verdict, because an answer to that question is determinative of the case and requires a reversal and dismissal. We have stated the facts in detail and copied from the correspondence at length, because Mikles' letter of July 8th—copied above in full—and the three-day extension which Kern-Limerick granted, constituted a waiver of the damages attempted to be claimed by Mikles.

The cross complaint of Mikles was on two counts: (a) failure to properly repair the WK tractor, and (b) fraudulent misrepresentations as to condition of the HD tractor. But Mikles waived any cause of action he might have had for damages on either of these counts: by his letter of February 18, he consented to the sale of the WK tractor and the crediting of the proceeds to his account; and by his letter of July 8, he agreed to pay for the HD tractor if given three days (which was granted). The case at bar is ruled by our cases of *Schichtl* v. *Bowser,* 175 Ark. 1141, 1 S. W. 2d 816, and *Pate* v. *McWilliams,* 193 Ark. 620, 101 S. W. 2d 794.

In *Schichtl* v. *Bowser, supra,* the buyer claimed damages for breach of warranty of pumping equipment. The evidence showed that the buyer used the equipment for a year, discovered all of the claimed defects, and when pressed for payment, requested additional time and promised payment. In that case the trial court instructed a verdict for the seller for the balance due on the pumping equipment and we affirmed, saying:

"The court instructed a verdict for appellee, and properly so, because appellant waived his right, to rely upon the defects in the outfit under his guaranty, by writing the letter to appellee's attorney of date April 26, 1926, in which he made an absolute promise to pay the balance of the purchase money, irrespective of any defects he had complained of prior to that time."

In *Pate* v. *McWilliams, supra,* the seller brought suit on a title retaining contract involving automobiles; and the buyers cross complained for damages, because of alleged

fraudulent misrepresentations inducing the sale.[4] The evidence showed that the buyers used the cars from May until December; and after having received full knowledge that the alleged representations were not true, the buyers continued to make payments on the automobiles. On such evidence the trial court instructed a verdict for the seller in his action for the balance of the contract price; and this Court affirmed, saying:

". . . appellants waived the right to defend on the ground of a fraudulent procurement of the contract, by making no complaint and by using the trucks and making monthly payments thereon long after they claimed to have discovered that the Dodge truck consumed more gas and oil than the Chevrolet trucks had consumed."

See, also, *McDonough* v. *Williams*, 77 Ark. 261, 92 S. W. 783, 8 L. R. A., N. S. 452, 7 Ann. Cas. 276, as a case involving waiver; and also 24 Am. Jur. 34, *et seq.;* 56 Am. Jur. 122, *et seq.;* and 67 C. J. 289, *et seq.* Other cases on waiver involving sales are collected in West's Arkansas Digest, "Sales," key number 50.

Even if we assume (a) that the repair job on the WK tractor was defective, so as to give Mikles a cause of action; (b) that the condition of the HD tractor was fraudulently misrepresented to Mikles, so as to give him a cause of action for fraud; and (c) that he had not received the amount of credit he wanted for the WK tractor,[5] nevertheless, Mikles knew all these matters when he wrote Kern-Limerick the letter of July 8th, in which he asked for a three-day extension [6] for payment, which request was granted. When he wrote that letter with full knowledge of all the things now alleged, and asked for further indulgence for payment, such conduct constituted a waiver of what he sought to assert in his cross

[4] The said representations were claimed to be that the Dodge trucks would consume less gasoline and oil than the Chevrolet trucks.

[5] The fact that it was stipulated by Mikles at the trial that the notes totaling $4,300 were past due and unpaid on the HD tractor shows that he was then making no claim for credit on the notes for any overplus from the sale of the WK tractor.

[6] The letter, as previously copied in full, says: " . . . I lack about three working days having the first part done, and as soon as this is done I will mail you some money."

complaint. He testified at the trial that he wrote that letter and "meant it too." The evidence as to waiver—being based on Mikles own letters—is undisputed; and therefore an instruction should have been given in favor of Kern-Limerick on Mikles' cross complaint.

The judgment of the Circuit Court in favor of Mikles is reversed and his alleged cause of action is dismissed.