# OSCEOLA MOTOR COMPANY, INC.
## *v.* Cletus TACKER, Jr.

78-22                                    567 S.W. 2d 109

### Opinion delivered June 19, 1978
### (Division II)

*Moore & Gibson, P.A.,* by: *Michael L. Gibson* and *Michael R. Bearden,* for appellant.

*Burk Dabney,* for appellee.

CONLEY BYRD, Justice. Appellee Cletus Tacker, Jr. bought a four wheel drive pickup from appellant Osceola Motor Company, Inc. on January 22, 1975. Appellee experienced some difficulties with the truck during the year including a broken speedometer cable and some trouble with the transfer case. Sometime before January 22, 1976, before the first annual installment payment was due, appellee returned the truck to appellant who refused to repair the transfer case under the warranty. Appellee notified appellant that if appellant did not repair the truck under the warranty, appellee was not going to pay for the truck. Appellant sold the truck under the applicable provisions of the Uniform Commercial Code and brought this action to recover a deficiency of $1,870.92. Appellee defended on the basis that he had revoked his acceptance of the vehicle and counterclaimed for his down payment of $901.59. The jury found the issues in favor of appellee but stated on their verdict that appellee should not recover his down payment. For reversal appellant contends:

> I. Since Cletus Tacker, Jr., requested permission to make a partial payment and requested an extension of time within which to make a payment, he waived his right to attack the condition of the vehicle by alleging breach of warranty and should be estopped to do so; that the trial court erred in not finding waiver and estoppel and either directing a verdict for Osceola Motor Company or granting their motion for a judgment notwithstanding the verdict.

> II. That the trial court erred in not granting Osceola Motor Company, Inc's. motion for a judgment notwithstanding the verdict since Cletus Tacker, Jr., did not allege or prove any damages which is an essential element to prove a breach of warranty.

The record shows that the truck was financed through Ford Motor Credit on the basis of three annual installments of $2362.98. The warranty on the vehicle was 12,000 miles or one year. At the time appellee returned the vehicle the speedometer showed 11,600 miles. The cross-examination of appellee, as abstracted, was as follows:

"I have had trouble with the truck for some time and had it repaired and serviced several times during the year. I waited a year before saying they had breached the warranty because they always fixed it until the last time I took it back. It was still in warranty and that's why I said breach of warranty.

I told John Carter of Osceola Motor Company that if I was going to have to make a payment on the truck and pay to have it fixed, which they said would cost around $1600.00 for the repairs, that I would need an extension on the payment to make them both. John Carter told me about the $1600.00 on about January 16th, which was five or six days before my first annual payment was due.

That day he didn't ask me about the payment. He said the warranty wouldn't cover it and suggested I call Ford Motor Credit and find out if I would have to pay all of it without a partial payment.

I guess I asked John Carter of Osceola Motor Company on about January 16th for an extension on my payment. We had talked about it other times and I do not know the exact date.

I deny that on January 16th I asked John Carter for an extension of payment. (At this point the attorney refers to the witness's discovery deposition and reads the question that was asked.) 'Did you, at some time around January of 1976, go to Osceola Motor Company and ask John Carter, who is one of the officers of the corporation, if you could make a partial payment on the note that was due?' Answer: 'I did.' (Abstract continues) I am not saying now that that's not correct, but since the deposition was made, I have found out what the date was. At that time I didn't know the exact date.

I did mention a partial payment to Ford Motor Credit Corporation in Memphis. This was before my payment was due and I called and asked them about the warranty and they said I would have to talk to Osceola

Motor Company. During the conversation with Ford Motor Credit, I told them I had the money to make a payment on the truck, but I didn't have enough to pay $1500.00 to fix the truck and make the payment, too. I asked if I could work out some kind of deal to make the payment. I wanted the truck, but if I was going to have to pay for having it fixed, I was going to have to see what I could do about it. I was going to see what it would cost to work it out. You can call somebody and ask them something but it doesn't mean you are going to do it. John Carter did not tell me he would extend my payment and he stated that the truck had too many miles on it and he wouldn't fix it."

Appellant in making his contention that appellee waived the alleged breach of warranty relies upon *Kern-Limerick, Inc.* v. *Mikles,* 217 Ark. 492, 230 S.W. 2d 939 (1950), where we held that one with full knowledge of the facts waived a breach of warranty by asking for and accepting additional time in which to make his installment payments. Even if we should consider that case to still be good law, it would appear under the record here, that there was still a fact issue as to whether appellee's inquiry about a partial payment was an unconditional offer. As we view the record, in the light most favorable to the jury's verdict, the jury could have determined that appellee was merely trying to determine the options available to him as a result of appellant's refusal to repair the vehicle under the warranty. Whether the warranty had terminated was a fact issue for the jury on the evidence presented.

Following the adoption of the Uniform Commercial Code, this court continued to rely upon *Kern-Limerick, Inc.* v. *Mikles, supra,* in holding that a consumer waived the breach of a warranty by not revoking his acceptance when the breach occurred, *Hudspeth Motors* v. *Wilkinson,* 238 Ark. 410, 382 S.W. 2d 191 (1964). However, after more thorough study of the Uniform Commercial Code, this court in *Stimson Tractor Co.* v. *Heflin,* 257 Ark. 263, 516 S.W. 2d 379 (1974), reconsidered the matter and stated:

"We recognize that to permit Heflin to now seek damages for breach of warranty is contrary to our

holding in *Hudspeth Motors* v. *Wilkinson,* 238 Ark. 410, 382 S.W. 2d 191, where this court held that there was no rejection or revocation by the buyer and we thus remanded the case for entry of a judgment in favor of the seller. *Hudspeth* was decided during the early years after the Uniform Commercial Code became effective in this State, and we were without benefit of briefs from both parties, only appellant submitting an abstract and a brief. We have now concluded, under the authority of the statutes cited in the previous paragraph, that this holding was in error and accordingly *Hudspeth* is overruled to the extent that the Circuit Court was directed to enter judgment for *Hudspeth* without first giving Wilkinson the opportunity to show damages for breach of warranty."

Neither can we find any merit in appellant's second contention. In view of the evidence showing that the vehicle was still in warranty and that the repairs which appellant refused to make would cost $1,500, we cannot say that appellee failed to prove any damages.

Affirmed.

We agree: HARRIS, C.J., and HICKMAN and HOWARD, JJ.