CHICAGO, ROCK ISLAND & PACIFIC RAILWAY COMPANY *v.*

WHITTEN.

Opinion delivered May 17, 1909.

1. CARRIERS—BAGGAGE.—Baggage may be defined as whatever a passenger takes with him for his own personal use and convenience, according to the habits or wants of the particular class to which he belongs, either with reference to the immediate necessities or the ultimate necessities of his journey.   (Page 465.)

2. SAME—BAGGAGE—QUESTION FOR JURY.—The question whether any particular article may be deemed baggage, in view of the nature of the journey and the circumstances and condition of the passenger, may properly be submitted to the jury.   (Page 466.)

3. SAME—FAILURE TO DELIVER BAGGAGE—EXEMPLARY DAMAGES.—It was error to instruct that exemplary damages might be recovered from a carrier whose agents wilfully, maliciously *or with gross negligence* failed or refused to put plaintiff's trunk off at his destination; the rule being that exemplary damages are recoverable only for wilfulness, wantonness or conscious indifference to consequences from which malice will be inferred.   (Page 467.)

4.  DEFINITION—MALICE.—Malice in law does not necessarily mean personal hate, but rather an intent and disposition to do a wrongful act greatly injurious to another.  (Page 468.)

5.  SAME—DAMAGES FOR MENTAL SUFFERING.—A passenger is not entitled to damages for mental suffering because defendant railway company failed or refused to put his trunk off at his destination if he suffered no physical injury therefrom.  (Page 469.)

Appeal from Pulaski Circuit Court, First Division; *Robert J. Lea,* Judge; affirmed after remittitur.

*Thos. S. Buzbee, John T. Hicks* and *G. A. McConnell,* for appellant.

In order to justify a verdict for exemplary damages for negligence, there must be the element of witfulness or conscious indifference to consequences from which malice may be inferred. 53 Ark. 7; 84 Ark. 249; 42 Ark. 328; 78 Ark. 331; 77 Ark. 109.. There must be some actual damage upon which to base a suit for exemplary damages.  55 Pac. 277; 48 Pac. 919; 24 N. E. 1029; 70 Ill. 496; 37 N. W. 116; 2 Suth. on Dam., p. 1129. Plaintiff could recover nothing more than actual damages on the contract.  72 Ark. 275; 74 Ark. 358; 75 Ark. 469; 77 Ark. 150.

*T. G. Malloy* and *Palmer Danaher,* for appellee.

Instruction number three was proper.  42 Ark. 326.  The rule is the same in Pennsylvania.  113 Pa. St. 520; 34 *Id.* 48; 119 *Id.* 42; 123 *Id.* 140.  Exemplary damages should be awarded for a refusal to unload a passenger's baggage.  58 Ark. 136. Such damages may be recovered without showing actual damages. 80 Ark. 158.  Plaintiff's trunk contained such articles as are ordinarily carried by sportsmen on fishing expeditions, and is included in the term "baggage."  74 Ark. 125.

FRAUENTHAL, J.  The plaintiff, in company with two friends, took passage on one of defendant's trains on August 10, 1907, at Little Rock, Arkansas, for Cache River for the purpose of spending several days fishing at and near the latter place. He purchased a ticket from defendant on that day which entitled him to carriage of himself and baggage from Little Rock to Cache River, two stations on defendant's line of railroad.  He delivered to defendant at Little Rock his trunk, which contained clothing, quilts, seine, tent, some cooking utensils and groceries, and had same

checked by defendant to Cache River.  He alleged that upon the arrival of the defendant's train at Cache River he went to the baggage car and pointed out to defendant's employees his trunk, and requested them to put the same off; but that the employees "wilfully, maliciously, negligently and with a wanton disregard of plaintiff's rights insolently refused to there deliver the trunk, and carried it away on said train;" and that thereby it caused him great bodily and mental suffering and inconvenience; that the trunk was not delivered to plaintiff until about two months later, and that the trunk and contents were greatly damaged.  He asked for $68 actual damages and $1,000 exemplary damages.

The defendant filed a demurrer to the complaint, which was overruled, and it filed an answer in which it denied every material allegation of the complaint.

The only witnesses in the trial of the case were the plaintiff and his two companions.  The plaintiff testified that he purchased from defendant a ticket and took passage on defendant's train, as set out in his complaint, with the intention of journeying to Cache River to spend several days fishing; and that he delivered to defendant his trunk with contents as set out in his complaint.  He thereupon gave the following testimony as to what occurred upon his arrival at Cache River:

"A.  When the train got to Cache River, we got off the car and went down and told them we wanted the trunk.  Of course, they had the trunk checked there.  We presented the check, and they threw out a trunk, and I told them that was not my trunk, and the baggage man said, 'Let me see your check,' and he said, 'No, it is wrong' and I saw the conductor getting ready to give the signal to leave, and I said, 'Wait; we want to find our trunk, for it has everything we have in it.'  And he just looked at me and gave a signal, and they went on down the road, and knew that it wasn't put off.  He just simply ignored me; that is all.

"Q.  How long did the train stay at Cache River after you told the baggageman that wasn't your trunk?

"A.  I could not state how long it was, but I think about a minute.

"Q.  Long enough to put off the trunk?

"A. It looked to me like they had plenty of time. There was no reason; only they simply didn't want to."

His companions gave the following testimony as to what occurred upon their arrival at Cache River:

"Q. I wish you would tell the jury what you did.

"A. We went to the baggageman and told him to put off the trunk, and he put off a trunk, and we told him it was not ours, and he never made any effort to change it or put ours off, and we finally compared our check with the train porter and the check that was on the trunk they put off was not the same as our check, and it seemed like he was going to force us to take it anyway, and he saw the checks were not the same, and by that time the train had been 'high-balled' out, and we also told him that our trunk had all of our provisions and everything else in it, and he said he could not help it, and he said he had put off one trunk.

"Q. Did you go on the car and point out the trunk to the baggageman?

"A. Yes, sir.

"Q. Did he then refuse to put it off?

"A. Yes, sir."

The jury returned the following verdict: "We, the jury, find for the plaintiff and assess the actual damage at $30.00, and further assess the sum of $100.00 as punitive damages." From the judgment entered on this verdict the defendant appeals to this court.

It is contended by the defendant that the above items carried by plaintiff in his trunk did not constitute baggage. And in the trial of the case it requested the court to instruct the jury, in substance, that if the plaintiff delivered to the defendant a trunk which contained goods, wares or merchandise other than such articles as are usually carried by ordinary persons when traveling, and that plaintiff paid to defendant no additional charge for the carriage of said trunk, then the plaintiff would not be entitled to recover. The court refused to give this instruction.

It is generally recognized by the courts that it is difficult to define with accuracy what will constitute baggage. It is ordinarily said to consist of articles of personal convenience and necessity. But it is at once evident that what may be considered

convenient and necessary for one person might not be so for another; and that the articles which might be very necessary upon a journey for one purpose might not be so for another journey and for another purposè. In the case of *Kansas City, Fort Scott & Memphis Railway Co.* v. *McGahey*, 63 Ark. 344, this court has defined baggage to be: "Whatever the passenger takes with him for his personal use or convenience, according to the habits or wants of the particular class to which he belongs, either with reference to the immediate necessities or to the ultimate purposes of the journey." *Little Rock & H. S. W. Rd. Co.* v. *Record,* 74 Ark. 125; *Railway Co.* v. *Berry,* 60 Ark. 433.

From this it will be seen that it is not necessary to constitute baggage that the articles which are being carried as such should be intended for the immediate necessities of the passenger on the journey, but they may also consist of articles that may be needed for the ultimate purposes of the journey. In fact, by a great majority of the courts, a very liberal construction has been placed upon the kind and character of the articles that will constitute baggage. In 3 Hutchinson on Carriers, (3d Ed.) § 1254, it is said: "Although the articles which the passenger may claim as baggage may not be such as are usually carried by passengers as personal baggage, and may indeed be but rarely carried with the traveler, and may be wholly useless to him for the purpose of comfort or convenience on the journey, yet if they be such as are appropriate or essential to the purposes of the journey, whether it be for pleasure or business, they may be considered as baggage, and the carrier may be held responsible for them as such; as in the case of the gun or the fishing apparatus of the sportsman, so often referred to in cases upon this subject as baggage under such circumstances."

The question as to whether any particular article may be deemed to be baggage may be properly submitted to a jury to determine in view of the nature of the journey and the circumstances and condition of the passenger. The court, therefore, did not err in refusing to give the several instructions asked for by the defendant relative to what constituted baggage under the circumstances of this case; and the court did not commit error in giving the following instruction on the part of plaintiff:

"1. Baggage includes whatever the passenger takes with

him for his own personal use and convenience, according to the habits or wants of the particular class to which he belongs, either with reference to the immediate necessities or to the ultimate purpose of his journey."

It is contended by the defendant that the court erred in permitting the plaintiff to recover exemplary damages in this case; and it particularly contends that the court erred in giving the following instruction to the jury on the part of plaintiff:

"If you find from the evidence that, upon arrival of defendant's train at Cache River, its agents or servants wilfully, maliciously or with such gross negligence as manifested a careless disregard of plaintiff's rights, failed or refused to put plaintiff's trunk off said train, you may add such sum as you think proper by way of vindictive or exemplary damages as a punishment for the wrongful conduct of defendant's employes."

The defendant in this case, by contract, had agreed to carry the baggage of plaintiff to Cache River and there to deliver it to him. Ordinarily, in actions upon contract, the amount that can be recovered is limited to the actual damages caused by the breach; and this is usually the measure of the damages whether the breach occurred on account of a negligent failure or a wilful refusal to perform the contract. But there are circumstances under which a carrier may violate its duty and obligation of carriage that may amount to a tort and justify the award of punitive damages. Under the obligation which is imposed by the law upon common carriers to protect their passengers from insult and indignities and injuries the facts and circumstances of a violation of that duty, whether technically a violation of a contract or a tort, may justify exemplary damages by way of example. And there may be facts and circumstances shown in the treatment of a passenger by the employees of the common carrier which indicate a violence towards him, or a malice and intent to injure which might justify the giving of punitive damages. *Fordyce* v. *Nix,* 58 Ark. 136; *Little Rock Railway & Electric Co.* v. *Goerner,* 80 Ark. 158.

But exemplary damages will not be allowed on account of an injury growing out of a mistake, or ignorance, or negligence, no matter how gross the negligence may be. The rule relative to the right of recovery of exemplary damages from a common car-

rier for a wrongful or negligent violation of its obligations and duties to a passenger has been formulated by this court in the following language:

"Negligence, however gross, will not justify a verdict for exemplary damages unless the negligent party is guilty of wilfulness, wantonness, or conscious indifference to consequences, from which malice will be inferred." *Railway* v. *Hall*, 53 Ark. 7; *St. Louis, I. M. & S. Ry. Co.* v. *Wilson*, 70 Ark. 136; *Arkansas & La. Ry. Co.* v. *Stroude*, 77 Ark. 109; *Choctaw, O. & G. Rd. Co.* v. *Cantwell*, 78 Ark. 331; *St. Louis, I. M. & S. Ry. Co.* v. *Dysart*, 89 Ark. 261; *Greer* v. *White, ante*, p. 117.

Here the motive of the injuring party becomes material. Mere negligence, indifference or careless disregard of the rights of others is not sufficient upon which to base a recovery for exemplary damages. The acts must be such as to evince malice. It is true that in law malice is not necessarily personal hate; it is rather an intent and disposition to do a wrongful act greatly injurious to another. But it is more than gross negligence that might indicate a careless disregard of the rights of others. 2 Sutherland on Damages, 1101.

In the above instruction given on the part of plaintiff it is provided that exemplary damages might be awarded in event the agents or servants of defendant failed or refused to put plaintiff's trunk off with such gross negligence as manifested a careless disregard of plaintiff's rights. Therefore, the instruction was erroneous and prejudicial.

The facts and circumstances in this case may be sufficient to warrant a jury in awarding exemplary damages. Although we may be of opinion that the testimony only indicates acts of negligence and great carelessness on the part of the defendant's employees, nevertheless we would not feel authorized to disturb the verdict of the jury awarding such damages under proper instructions. The evidence should be submitted to the jury for them to decide whether these negligent employees were "guilty of wilfulness, wantonness or conscious indifference to consequences from which malice will be inferred;" and this must be proved by evidence before any exemplary damages can be awarded in this case.

Under the circumstances of this case we do not think that any further proof of actual damages is necessary if the plaintiff is otherwise entitled to exemplary damages; but we are of opinion that under the facts of this case and because of no physical injury the plaintiff is not entitled to recover any damages for alleged mental suffering as asked for in his complaint. *St. Louis, I. M. & S. Ry. Co.* v. *Taylor*, 84 Ark. 42.

It appears from the testimony that the baggage was returned to plaintiff greatly damaged. The evidence is sufficient to sustain the verdict of the jury for the actual damages and the amount thereof. But error was committed by the court in giving the instruction number 3 on the part of plaintiff relative to exemplary damages. Therefore if the plaintiff will within 15 days remit the amount of the exemplary damages, the judgment will be affirmed.

But, inasmuch as justice will be more evenly meted out by the submission and trial of both elements of damages, rather than by the submission and trial of the element of exemplary damages alone, in the event that the plaintiff is not advised to enter the above remittitur, the judgment will be reversed and the cause remanded for a new trial.