JOE LYONS MACHINERY COMPANY *v.* WIEGEL.

Opinion delivered April 13, 1925.

1. EVIDENCE—SELF-SERVING STATEMENT—EFFECT.—Where the purchaser of a truck, defending a suit for the purchase money on the ground that the truck was not in condition as represented, introduced a letter from the seller written after the sale stating that the understanding was that plaintiff's responsibility ceased after the truck reached a certain city, such letter was not conclusive as to the facts recited as against the purchaser, who introduced it merely to attack the credibility of a witness for the seller testifying that there was no understanding as to the condition of the truck.

2. SALES—FALSE REPRESENTATIONS.—Testimony *held* to sustain a finding that material and false representations were made by the seller in the sale of a truck, and that the buyer had a right to and did rely upon such representations.

3. SALES—FALSE REPRESENTATIONS IGNORANTLY MADE.—Though a seller was ignorant of the condition of a truck, and the buyer had equal opportunity to know the facts, this would not relieve the seller from liability for material representations which proved to be false, were intended to deceive, and were relied on by the buyer.

4. TRIAL—REFUSAL OF INSTRUCTION ALREADY COVERED.—Refusal of an instruction that representations as to the condition of the truck sold must have been "substantially" untrue to defeat re-

covery, *held* not error where another instruction required a finding of materially false representations.

5. SALES—FALSE REPRESENTATIONS.—A seller may not say that the buyer should not have believed statements made by him as to the condition of the truck sold, if investigation would have shown them to be untrue, especially when the defects were not discoverable until after the truck had been driven after the sale.

Appeal from Pulaski Circuit Court, Second Division; *Richard M. Mann,* Judge; affirmed.

*F. T. Murphy* and *Emerson & Donham,* for appellant.

A party has no right to rely upon statements of the other when the means of knowledge is equally open to both. *Yeates* v. *Prior,* 11 Ark. 58; *Matlock* v. *Reppy,* 47 Ark. 148; *Gaty* v. *Holcomb,* 44 Ark. 216; *Johnson* v. *St. L. Butchers' Supply Co.,* 60 Ark. 387. Fraud is never presumed. *Russell* v. *Brooks,* 92 Ark. 509; 144 Ark. 87.

*Carmichael & Hendricks,* for appellee.

It is not necessary that the false representations should have been knowingly made; it is sufficient if defendant asserted them to be true of his personal knowledge and made them with intent to have appellee act on them, and that plaintiff did act thereon to his injury. *Bell* v. *Fritts,* 161 Ark. 371.

SMITH, J.  On the 28th day of July, 1923, appellee, who was a road contractor, purchased from appellant a second-hand five-ton White truck, with dump body and steel wheels, for the price of a thousand dollars, of which $250 was paid in cash and the balance of $750 was represented by a check drawn by appellee on the bank in which he carried his account. Appellee became dissatisfied with his purchase, and stopped the payment of the check. Appellant thereupon brought suit for the amount of this check. Appellee filed an answer denying liability, and, by way of counterclaim, prayed judgment for the $250 cash he had paid. The allegations of appellee's answer and counterclaim were sustained by the jury, and there was a verdict and judgment in his favor for $250, from which is this appeal.

At the time of the sale of the truck a bill of sale was executed, which appellee contended was intended only to evidence the passing of the title, and that a blank form of contract was used which was not intended to evidence the terms of the sale made, but was a form of contract intended to be used when machinery was sold on partial payments, and that the provisions of this contract were inapplicable to appellee's purchase. Appellee insisted that there was an express warranty of the contract, which he sought to prove on the theory that the writing was not intended to and did not in fact cover the entire contract of sale. The court, however, held against this contention, and refused to permit appellee to engraft a warranty on the bill of sale.

Appellee defended on the ground that the sale of the truck was procured by fraud, and the cause was submitted to the jury on that issue.

On behalf of appellant the following testimony was offered: The truck was a second-hand one, and had been previously used by appellee for several days. The truck had been rebuilt in Memphis at a cost of $733.61, and was believed to be and in fact was in good condition. Appellee was familiar with machinery, and examined the truck before purchasing it, and no false representations to induce appellee to purchase were made.

Appellee admitted that he had used for several days a second-hand truck belonging to appellant, but he did not know whether this was the truck which he had purchased. He knew the truck he bought was a second-hand one, but he was told that it had been rebuilt and over-hauled in Memphis, and was assured that it was in good order, and that he relied on and was deceived by this statement of fact, and that he was induced to buy the truck by his reliance on this statement of fact. He admitted that he was somewhat familiar with machinery, and had examined the truck before purchasing it, but he testified that no one could tell what the truck's condition was without seeing it run. inasmuch as it was second-hand, and that he bought it before running it, relying

on the representation that it was in good order. Appellee stated to appellant's salesman who made the sale that he intended to drive the truck from Little Rock to Shreveport, and, after the purchase, one of appellee's employees drove the truck from appellant's salesroom to appellee's home, a distance of only a few blocks, and the truck became overheated, and was driven to the shop by appellant's agent after appellant was notified of the trouble. Appellee was assured that the defect causing the trouble had been repaired, and the truck was again turned over to appellee's employee, who started on the trip to Shreveport, but, after getting out twelve or fourteen miles on the way, a bearing burned out. Appellant was notified of this fact, and a mechanic was sent to make the necessary repair, and one of appellant's representatives undertook to drive the truck, but the trouble continued, and, when a sandy place in the road between Benton and Malvern was struck, the truck stalled and could go no farther. Appellee had gone on ahead, and was in Arkadelphia when he was notified of the trouble, and he immediately stopped payment of the check, and wrote appellant that the truck was of no value. He stated in this letter that he would like to have the truck if it were in usable condition, and that he would carry out his contract if appellant would place the truck in condition to be used. Appellant replied by filing this suit.

Appellee further testified that he saw the bearing after it was taken out by the mechanic, and that no oil grooves had been cut in the bearings. A witness for appellant testified that the grooves had been stopped with dirt, but witnesses for appellee testified that the trouble developed in driving the truck only a few blocks, and that the engine heated at once, and that the bearing burned out at Red Gates, a point between Little Rock and Benton.

During the trial appellee offered in evidence a letter which he had received from appellant on August 11, 1923, which reads as follows: "The understanding was that, if the truck reached Benton, all responsibilities on our

part ceased, although this truck was sold to you to be delivered to you at our warehouse in the condition it was in at that time.''

Appellant insists that, as appellee introduced this letter, he was bound by it, and that he could not, and did not, contradict the statement of fact therein contained that, if the truck reached Benton, appellant's responsibility ceased.

It appears, however, that this letter was introduced on the cross-examination of a witness for appellant, who had testified that there was no understanding whatever about the condition of the truck, and for the purpose of attacking the credibility of the witness. The letter was a self-serving statement of appellant, and we do not think it is conclusive of the facts therein recited. Moreover, it appears that the trouble developed before the truck reached Benton, first in Little Rock, where it was purchased, and later at Red Gates.

The testimony in the case cannot be reconciled, but, if that offered on behalf of appellee is credited, the jury was warranted in finding that appellee relied upon the representation that the truck had been overhauled and was in good condition, and that he was induced by this representation to purchase, and that these representations were material, and were false.

It is insisted by appellant that a verdict should have been directed in its favor, and that any statements made by its officers and agents in negotiating the sale were mere expressions of opinion, upon which appellee had not relied and did not have the right to rely, as he knew as much about the truck as did any one who participated in the sale upon behalf of appellant. But we do not think the jury's finding to the contrary, under the instructions, is unsupported by the testimony.

It is insisted that, if there was a defect in the truck, the testimony does not show that appellant knew of it. But it was not essential that this showing be made, as appellant was as much responsible for a material mis-

representation made in ignorance of the facts as for a representation which was known to be false. On this issue appellant requested the court to give the following instruction: "No. 2. Although you may believe that plaintiff's officers, or one or more of them, represented to defendant that the truck had been sent to the factory and overhauled, and that said truck was in good condition in every way, yet you are instructed that, unless said statements were false and fraudulent at the time of making them, and were made for the fraudulent purpose of deceiving, defrauding and misleading defendant, that defendant relied upon said false statements in purchasing said truck, and that he had not had an equal opportunity with plaintiff's officers to know the condition of said truck, still you should find for plaintiff."

We think no error was committed in refusing this instruction. The undisputed testimony shows that appellee made no test of the truck until it was driven out of the shop, and that the trouble developed before it reached appellee's home, a few blocks away. This trouble was apparently remedied by appellant's mechanic, who also undertook to remedy the additional trouble which developed on the way to Red Gates.

As has been said, the testimony does not affirmatively show that appellant knew of the defects in the truck, but, if it did not know, it had no right to make material misrepresentations concerning a fact of which it was ignorant, yet the requested instruction would have relieved appellant of liability for such misrepresentations if appellee had an equal opportunity with plaintiff's officers to know the condition of the truck. The parties may have had equal opportunities to know the condition of the truck, and yet neither may have known what that condition was, but such mutual ignorance would not relieve appellant from responsibility for material misrepresentations, if they were in fact relied on.

The case was submitted to the jury under the following instruction: "Gentlemen of the jury: This is a suit by the Joe Lyons Machinery Company against E.

N. Wiegel as defendant, in which the plaintiff seeks to recover $750, the admitted balance on the purchase price of a certain truck. The defendant claims in defense, gentlemen of the jury, that this contract—the contract for the purchase of the truck—was made by him because of the fraudulent representations by the plaintiff as an inducement to him to purchase this truck, and on which he relied in purchasing the truck. Gentlemen, the burden is on the defendant in this case to prove these fraudulent representations, as the court will hereafter instruct you. Representations, gentlemen, in order to be fraudulent, must be of a reliable character and hold out inducements calculated to mislead the purchaser and induce him to buy on the faith and confidence of such representations. In other words, gentlemen, if you find from the testimony in this case that the plaintiff made to the defendant false representations—material false representations—about the contract, and, at the time they were made, the plaintiff either knew that they were false, or, not knowing that they were false or true, nevertheless made them, and made them with the intention of deceiving the defendant, and that the defendant relied on those representations, then, gentlemen, that would be a fraud, and the plaintiff cannot recover. If, on the other hand, you find from the testimony that false and fraudulent representations, as the court has defined them to you, were not made, or that the defendant did not rely on such statements as were made, then they would not be fraudulent or fraud in this case, and you should find for the plaintiff.''

It will be observed that this instruction told the jury that a representation to be fraudulent must be concerning a material fact, which the seller knew to be false, or, not knowing whether they were true or false, made them, and made them with intention of deceiving the purchaser, and that such representations must be calculated to mislead the purchaser and induce him to buy on the faith and confidence of such representations. In addition, the instruction told the jury that, if there were no false

representations, as defined in the instruction, or if the purchaser did not rely on such statements as were made, the representations would not be fraudulent, and to find for appellant—the plaintiff. In other words, the instruction required the jury to find that material false representations were made; that they were calculated to mislead the purchaser and to induce him to buy; that they were made with the intention of deceiving the purchaser, who relied on such statements as were made. If all these facts were found in favor of the purchaser, it would necessarily follow that he had the right to rely on the representations and had the right to say that the sale was fraudulent.

Another instruction requested by appellant required the jury to find that the representations made by appellant were substantially untrue. We think no error was committed in refusing this instruction, as the one given, set out above, required the jury to find that there were material false representations before finding for the purchaser.

The only other instruction requested by appellant, except a request that a verdict be instructed in its favor, was one in which the jury would have been told, had the instruction been given, that, if appellee was sufficiently skilled to investigate and determine the condition of the truck, and yet relied, not on investigation which he might have made, but upon the statements of plaintiff's officers, to find for the plaintiff. This instruction was properly refused. Appellant has no right to say that appellee should not have believed the statements of its officers, if an investigation would have shown that they were untrue, especially as the defects were discoverable only after the truck was tested by being driven, and such test was not made until after the sale.

The legal principles here applied have been often announced in the numerous cases cited in the briefs of counsel, and we think no useful purpose would be served by reviewing those cases, and, as we find no reversible error, the judgment of the court below is affirmed.