ADVANCE ALUMINUM CASTINGS CORPORATION *v.* DAVENPORT.

5-543                                        274 S. W. 2d 649

Opinion delivered January 10, 1955.

[Rehearing denied February 14, 1955.]

*A. U. Tadlock,* for appellant.

*Bon McCourtney* and *Claude B. Brinton,* for appellee.

WARD, J. On or about September 10, 1950, appellee contracted to buy certain Miracle Maid Cooking Utensils amounting to the total purchase price of $172.74 from appellant through its agent a Mr. Ford. Twenty dollars were paid to Ford soon after the purchase was made, and when the goods were received about the middle of October appellee paid the further sum of $35.37. The note which appellee signed called for the balance to be paid in ten monthly installments of approximately $12.00 each. Only one payment of $12.00 was made by appellee and that was on or about December 1, 1950, leaving an unpaid balance of $105.37.

This action was brought by appellant to recover from appellee the balance of the purchase price in the amount stated above. Appellee answered with a general denial, and by way of cross complaint stated that he had been damaged because of fraud and misrepresentation practiced by the defendant. The acts of fraud and misrepresentation were specifically stated to be that: Ford, as agent for appellant, falsely represented that the purchased articles were fit for household use and that they

were of the value stated in the sales contract, but in fact said articles were worthless and unfit for household use and of no value to this defendant. It was further stated by way of cross complaint, that, by said fraud and misrepresentation, appellee had paid to appellant the sum of $67.37 and that he was entitled to have judgment against appellant for said amount.

At the close of all the testimony appellant filed a motion for a directed verdict for the reason appellee had ratified the sale by making the December payment of $12.00 after having knowledge of any defects in the utensils, and thereby waived any fraud that might have been practiced on him by appellant or its agent. The motion was overruled, and the cause was submitted to a jury which found for appellee. Accordingly, judgment was rendered against appellant for costs.

Appellant insists that the court erred in refusing to grant his motion for a directed verdict in the amount sued for, and we agree with this contention.

It is not denied by appellee that he signed the note or that there is a balance due thereon of $105.37. His only defense is that he was induced by fraudulent representations to buy and the utensils were not fit for household use.

It is undisputed also that appellee received the utensils, used them, and that after knowledge of their unfitness he made a payment of $12.00 on the purchase price some thirty days later, without any complaint to appellant. In fact there is no positive evidence of any complaint until May 24, 1951—some seven months after the utensils were received and used. The testimony in this respect is set out below.

Mrs. Davenport stated that she used the utensils a couple of months before she gave up.

"Q. Now then, why didn't you keep paying for it?

"A. I couldn't see where it was worth it."

Mr. Davenport, appellee, testified:

"Q. After you received that merchandise did you try—did your wife try to use it?

"A. Yes, sir.

"Q. And did you make another payment on it after you received it?

"A. Yes, sir.

"Q. Now, before you sent that payment had you noticed anything wrong with this equipment? Had it been doing what Mr. Edmund told you it would do, or did you notice?

"A. Yes, sir; I didn't like it at that time.

"Q. You didn't like it at that time, but did you go ahead and send another payment?

"A. I did."

Four letters from appellee to appellant were introduced in evidence, showing appellee's dissatisfaction with the utensils and offering to return them. The first or earliest letter was dated May 24, 1951. In regard to this letter appellee testified:

"Q. When was it you first wrote the company and told them you were not satisfied with the cook-ware?

"A. Some months later.

"Q. Well was it in May, 1951.

"A. It could have been."

Under the above factual situation it appears that appellee waived any possible fraud which might have induced him to buy the allegedly unfit merchandise, and it was error for the trial court to refuse to instruct a verdict for appellant.

A similar issue was considered, and decided adversely to appellee here, in *Kern-Limerick, Inc.* v. *Mikles*, 217 Ark. 492, 230 S. W. 2d 939. It was there contended by Mikles that he was induced by fraudulent representation to buy certain machinery, but, after knowledge of the

defects, he wrote a letter asking for an extension of time to pay. In reversing and dismissing a judgment in favor of Mikles, the court said: "The evidence as to waiver—being based on Mikles own letter—is undisputed; and therefore an instruction should have been given in favor of Kern-Limerick on Mikles' cross complaint."

Also in the recent case of *Teare* v. *Dennis*, 222 Ark. 622, 262 S. W. 2d 134, the same issue was likewise decided. Pertinent quotations from the opinion are:

"For reversal here, appellants stoutly insist that even though the contract in question were procured by fraud and misrepresentation, the undisputed evidence shows that appellees, by their acts, waived this defense and ratified the contract. We have concluded that appellants' contention must be sustained."

"In the circumstances, as indicated, we hold that appellees lost their right to avoid the contract for fraud, by waiver and ratification, after they were in full possession of all the facts, by going ahead, publishing and using the material."

The court also approved, as the general rule, that: " 'Fraud inducing a contract may be waived, and a contract obtained by fraud, being voidable and not void, may be ratified by the party who was induced by the fraud to enter into the contract'."

In the case under consideration, appellant did not file a reply denying appellee's allegation of fraud in his cross complaint, and it is ably and earnestly insisted by appellee that, for this reason, appellant is not here entitled to insist on a waiver. We cannot sustain appellee in this contention.

When appellee proceeded to trial without insisting on a reply or asking for a judgment on his cross complaint, he waived a reply on the part of appellant. Ark. Stats. § 27-1132 says that a reply may be filed in such instances but does not say one shall or must be filed. There are also several decisions of this court contrary to appellee's contention. See *Gibbs* v. *Dickson*, 33 Ark.

107; *Winters, et al.* v. *Fain,* 47 Ark. 493, 1 S. W. 711; *Young* v. *Gaut,* 69 Ark. 114, 61 S. W. 372; and, *Holcomb & Hoke Manufacturing Company* v. *Fish,* 177 Ark. 631, 7 S. W. 2d 313.

The last cited case approves the holdings in the other cases, and, referring to the *Gibbs* case, the court said: "In that case it is said the correct practice is to move the court for judgment upon the undenied plea; and if the defendant fails to move, and goes to trial as if the issue was made up, he loses his advantage."

In view of what has been said, and since the case was fully developed, the judgment of the lower court is reversed with directions to the trial court to enter judgment for appellant in the amount sued for.

Justice MILLWEE dissents.