WEST *v.* CARTER.

5-2875                                     363 S. W. 2d 415

Opinion delivered January 7, 1963.

*Shackleford & Shackleford,* for appellant.

*A. A. Thomason,* for appellee.

ED. F. McFADDIN, Associate Justice. The appellants insist that they were entitled to an instructed verdict in their favor. That is the only issue presented.

The appellants are J. A. West *et al.,* doing business as West Lincoln-Mercury Company, and the appellee is Harry Carter, an individual. Carter contracted to purchase from appellants a used 1958 Pontiac automobile. To complete the transaction, Carter delivered to appellants a 1955 Chevrolet automobile and signed a condi-

tional sales contract which, with insurance and carrying charges, was for a total amount of $1,332.96, and which was payable in monthly installments of $55.54. Within a few days after the transaction, Carter reported to appellants that the Pontiac car was not in good "A-1 condition," as it had been represented to him; something was wrong with the A-frame; one door would not stay closed; the car had a tendency to "dart" in the steering. Appellants assured Carter that the Pontiac would be put in good condition, and did undertake repair work on the car on three different occasions over a period of as many months; and the repair bill amounted to an excess of $100.00.

Appellants had transferred the conditional sales contract to the Universal C.I.T. with recourse. When the first monthly payment became due, Carter told appellants he would not make the payment because the car was defective; but appellants assured Carter that if he would make the payment, appellants would repair the car to Carter's satisfaction. On such repeated promises and representations Carter made three monthly payments; but then refused to make any more, since the Pontiac remained unsatisfactory. Thereupon, appellants reacquired the conditional sales contract from Universal C.I.T. and filed action against Carter for the balance on the contract, plus $60.51 balance on open account for repairs. Carter's defense was that appellants had been guilty of false representations as regards the condition of the Pontiac, in that it had been wrecked and was never put in good condition, as represented. Trial to a jury resulted in a verdict and judgment thereon; that appellants should return to Carter the 1955 Chevrolet, or its value of $400.00; and that Carter should return to appellants the 1958 Pontiac, or its value of $1,012.62; and that Carter recover his costs. To reverse that judgment, appellants bring this appeal, urging only one point: "The Court erred as a matter of law in failing to direct a verdict in favor of appellants for the relief sought."

The appellants urge (a) that Carter admitted executing the conditional sales contract; and (b) that Carter

admitted making three payments on the contract after learning that the Pontiac was defective. Because of these matters, appellants claim that Carter waived any and all defects in the Pontiac car; and appellants cite and rely on three cases, to-wit: *Hignight* v. *Blevins*, 220 Ark. 399, 247 S. W. 2d 996; *Teare* v. *Dennis*, 222 Ark. 622, 262 S. W. 2d 134; and *Advance Aluminum Co.* v. *Davenport*, 224 Ark. 440, 274 S. W. 2d 649. To these cases, others might be added, one of which is *Kern-Limerick* v. *Mikles*, 217 Ark. 492, 230 S. W. 2d 939, wherein we cited *Pate* v. *McWilliams*, 193 Ark. 620, 101 S. W. 2d 794:

"In *Pate* v. *McWilliams, supra,* the seller brought suit on a title retaining contract involving automobiles; and the buyers cross complained for damages, because of alleged fraudulent misrepresentations inducing the sale. The evidence showed that the buyers used the cars from May until December; and after having received full knowledge that the alleged representations were not true, the buyers continued to make payments on the automobiles. On such evidence the trial court instructed a verdict for the seller in his action for the balance of the contract price; and this Court affirmed, saying:

" ' . . . appellants waived the right to defend on the ground of a fraudulent procurement of the contract, by making no complaint and by using the trucks and making monthly payments thereon long after they claimed to have discovered that the Dodge truck consumed more gas and oil than the Chevrolet trucks had consumed.'

"See, also, *McDonough* v. *Williams*, 77 Ark. 261, 92 S. W. 783, 8 L. R. A., N. S. 452, 7 Ann. Cas. 276, as a case involving waiver; and also 24 Am. Jur. 34, *et seq.*; 56 Am. Jur. 122, *et seq.*; and 67 C. J. 289, *et seq.* Other cases on waiver involving sales are collected in West's Arkansas Digest, 'Sales,' key number 50."

It is true that we have repeatedly held that where a buyer continues to make payments without protest, after learning of the misrepresentations inducing the sale, then such payments constitute a waiver.[1] But, in

---

[1] In *Sirmon* v. *Roberts*, 209 Ark. 586, 191 S. W. 2d 824, there is a definition and discussion of "waiver."

the case at bar, the evidence clearly reflects that Carter made the payments only after he was repeatedly assured by the appellants that they would repair the Pontiac and fulfill their representations. Such assurances by appellants to Carter caused him to make the payments which he made; and this evidence differentiates the case at bar from the cases cited by appellants. In *Pate* v. *McWilliams, supra,* we held that the purchaser waived his defense, of fraudulent representations inducing the contract, when, after learning the representations to be false, he (a) continued to make the monthly payments and (b) made no complaint. In the case at bar, the purchaser (a) made repeated complaints, (b) the seller undertook to repair the defects, and (c) the purchaser made the monthly payments only after the seller had promised to remedy the defects. Thus the cases holding that payments after discovery of defects justify an instructed verdict for the seller can have no application here because of the factual situation. The issue was fairly presented to the Circuit Judge when the appellants made the motion for an instructed verdict. Here is the language of the appellants' attorney, and the Court's reply thereto:

"(By Mr. Shackleford): The basis for the motion for a directed verdict for the Plaintiff is upon the fact that the Defendant has waived any right to ask for a recision of the contract based upon fraud or misrepresentation of the Plaintiffs by virtue of this actions in keeping the vehicle in his possession and making payments thereon pursuant to the provisions of the contract."

"(By the Court): I would agree that you are right except for the fact that the defendant testified that the plaintiff, or the plaintiff's manager, told him to go ahead and make the payments, that they would repair this vehicle and put it in proper shape; and I think that does away with any right of pleading waiver."

The ruling of the Trial Court was in line with the language of the Georgia Court of Appeals in *Kimbrough* v. *Adams,* 16 S. E. 2d 96:

"The making of any payment by the defendant to the plaintiff on the purchase price, if the defendant made any, before the truck was finally returned, and pending the efforts of the plaintiff to make the repairs, would not as a matter of law constitute a waiver by the defendant of any fraud of the plaintiff inducing the contract. In *Couch* v. *Thompson,* 34 Ga. App. 383 (3), 129 S. E. 794, 795, the court held: 'Where, after discovering the fraud, the purchaser paid the purchase money under an agreement with the seller that the seller would make good to the purchaser any damage resulting from the fraud, there was no waiver of the fraud.' "

In short, the question of whether Carter relied on the statements of the appellants in making the payments was a proper matter for the jury; but, under the evidence in the record, the Court was correct in refusing an instructed verdict in favor of appellants.

Affirmed.

Holt, J., not participating.