NANCE *v.* COOK

5-3779                                        399 S. W. 2d 262

Opinion delivered February 21, 1966

*Keith, Clegg & Eckert,* for appellant.

*Chambers & Chambers,* for appellee.

PAUL WARD, Justice. In this case it is contended that appellants allowed saltwater to flow from their oil operations onto appellees' land, causing injury thereto. One of the principal issues involved is whether

appellees' claim for damages is barred by the three years statute of limitations.

Appellees are the heirs of John C. Cook who died in 1951 seized of the 170 acres of land here involved. Appellants are B. J. Nance and A. W. Langston, partners, d/b/a L. & N. Drilling Co., engaged in exploring for oil and gas.

On February 1, 1962 appellees filed a complaint in circuit court alleging, in substance: appellants had been drilling oil wells near their land for several years; they have been producing saltwater and allow it to "seep and drain" onto appellees' land, causing damage thereto; this condition began about five years ago, and it has continued up to the present, and; appellants have "negligently, knowingly, and intentionally, allowed the saltwater to seep and flow upon said lands, causing damage thereto." The prayer was for $9,000 actual damages and $2,500 punitive damages. Appellants entered a general denial, and pleaded the statute of limitations.

After a rather extended hearing the matter was submitted to the jury upon instructions by the court (some requested by appellants and by appellees), and the jury awarded to appellees $2,500 actual damages and $2,500 punitive damages.

On appeal appellants do not challenge any of the instructions or the amounts of the judgments. For a reversal they rely on the four separate points hereafter separately discussed.

*One.* It is first insisted the trial court erred in refusing to grant appellants' motion for a summary judgment based on limitations. We do not reach the merits of this point because of what is said below, and for the reason that the record does not disclose what disposition the court made of said motion.

*Two.* Here it is argued there is no substantial evi-

dence to support the verdict because the undisputed evidence shows the action is barred by the statute of limitations. We are unable to agree. While it is true the testimony is not entirely clear as to just when the statute began running against appellees' claim, yet we are unwilling to say there is no substantial evidence to support the jury's finding on this point.

It is in effect conceded by the parties that if appellees' cause of action matured prior to February 1, 1959, then this case must be reversed.

In the case of *Sunray DX Oil Co.* v. *Thurman,* 238 Ark. 789, 384 S. W. 2d 482 this Court was confronted with much the same issue which is here considered, and under a similar factual situation. In that case we quoted with approval the language set out below as taken from *H. F. Wilcox Oil & Gas Co.* v. *Juedeman,* 101 P. 2d 1050:

> " 'It seems well settled that in an action for damages for permanent injury to real estate caused by continuing saltwater pollution the limitation begins to run at the time when it becomes obvious that a permanent injury has been suffered.' "

In the case of *Texas, Tennessee Gas Transportation Co.* v. *Fromme,* 153 Tex. 352, 269 S. W. 2d 336, the Court said:

> "Where there is a direct invasion of one's property of a permanent character, and the original invasion and its continuance are necessarily injurious, the damage is original and may be at once fully compensated . . . in such case the statute begins to run from the date of the invasion."

The testimony in the case under consideration concerning the issue of when it became *obvious* to appellees that their land was permanently damaged, is lengthy and conflicting, and it would serve no useful purpose to set

it out at length. We have carefully read the testimony and are unable to say there is no substantial evidence to support the jury verdict. There was testimony: that no substantial part of the damage was done to appellees' land before 1959; there was some damage evident in 1959 but grew worse in 1960; that some of the land was all right in 1958 but could not be cultivated in 1959 to 1962; the damage to the land was a continuing process—that the saltwater began to "creep" upon the land.

*Three.* We find no merit in the contention that appellees waived their right to punitive damages by suing appellants along with James D. Reynolds and Dan W. Reynolds, as joint tortfeasors. This contention is based on what we said in the case of *Dunaway* v. *Troutt,* 232 Ark. 615, 339 S. W. 2d 613: ". . . the plaintiff waives the right to punitive damages when more than one party is made defendant. . . ." There are, we think, several reasons for the position we take. First, Reynolds and Reynolds were dismissed by the trial court during the trial. Second, the trial court gave instructions to the jury relative to punitive damages without objections on the part of appellants. In fact appellants requested instruction no. 13 (given by the court) dealing with when punitive damages are allowable. Appellants cannot raise the question of punitive damages for the first time in this Court. Also, appellants here constitute a partnership (or a single unity) which was not the situation in the *Troutt* case, *supra.*

*Fourth.* Finally, appellants contend there is no substantial evidence to sustain the jury's verdict for punitive damages, and we must agree.

We said in *Miller* v. *Blanton,* 213 Ark. 246, 210 S. W. 2d 293 that before punitive damages may be awarded ". . . it must be shown that there was on the part of the tortfeasor a 'wanton disregard of the rights and safety of others'."

To sustain the judgment for punitive damages ap-

pellees appear to rely most heavily upon the testimony of Mr. Ben Eddy who operated the wells for appellants as their employee. It is true that Eddy stated he knew the saltwater was seeping from the pits, that it was going down a natural drain toward the Cook land, and that he knew something had been said about pollution control, but even so this does not, in our opinion, show such "wanton disregard of the rights and safety" of appellees as to sustain a judgment for punitive damages.

In accord with what has been said, the judgment for actual damages is affirmed and the judgment for punitive damages is reversed.

JOHNSON, J., would affirm on both points.