RAY DODGE, INC. *v.* ORVILLE F. MOORE

5-5749                                         479 S.W. 2d 518

Opinion delivered February 21, 1972
[Rehearing denied March 20, 1972.]

1038

*Branscum, Schmidt & Mazzanti,* for appellant.

*Gentry & Huckabay,* for appellee.

JOHN A. FOGLEMAN, Justice. Appellee brought this action to recover compensatory and punitive damages for the alleged fraud and misrepresentation of appellant, an automobile dealer, in the sale of a used pickup truck. Appellant seeks reversal of a judgment for $350 compensatory damages and $5,000 punitive damages, asserting error in (1) the denial of its motion for a directed verdict, (2) instructing the jury that appellee had the burden of proving fraud by a mere preponderance of the evidence rather than by clear and convincing evidence, and (3) submitting the question of punitive damages to the jury and instructing the jury that a corporation could be held liable for exemplary or punitive damages based upon unauthorized and unratified acts of its agents. Appellant also argues that the jury verdict for punitive damages is excessive in that it bears no reasonable relationship to the actual damages and that it was based upon passion and prejudice. We find no error and affirm the judgment.

Insofar as the contention of appellant as to the denial of a directed verdict is concerned, we have carefully considered the evidence as abstracted and, giving it its strongest probative force and drawing all reasonable inferences in his favor, it is sufficient to present a jury question. See *Greiner Motor Co.* v. *Sumpter,* 244 Ark. 736, 427 S. W. 2d 8. Appellee based his cause of action upon allegations that the distance traveled by the pickup truck he purchased had been misrepresented to him by the officers and agents of appellant. Appellant's argument in this regard is that appellee waived whatever cause of action he might have had by continuing to make monthly payments upon the installment sale contract, without protest, for a period of six weeks to four months

after discovering that the odometer reading on the vehicle had been set back to reflect only 25,600 miles when the actual mileage was approximately 42,000.

Conflicting conclusions might be drawn from the evidence on this point. The vehicle was purchased by appellee Moore on November 8, 1969. He testified that he discovered the actual mileage sometime in the summer of 1970, in a conversation with William Lee Adams, who traded the truck to appellant. He said that Jim Ray, a salesman and one of the owners of Ray Dodge, Inc., had stated when the purchase was made that if anything was wrong with the truck he could bring it back for repairs, and that Ray also assured him that the odometer reading was correct. He did take the vehicle back for a tune-up and oil change, for rebuilding of the motor and carburetor and for problems with the heating and air conditioning systems. He was satisfied with the service on most items, but said that he was displeased with results on the heating and air conditioning control system and on the failure to replace shock absorbers as promised, and disgusted with the necessity for repeated returns of the truck for such services. Appellee said that he first learned of the mileage discrepancy not more than six weeks prior to the date of filing of the suit, which was August 3, 1970. He said that he and his wife were debating the steps to be taken during this interval. He admitted that payments on the contract were not discontinued and that he did not make any objection to appellant about the misrepresentation before filing suit.

Waiver is the voluntary abandonment or surrender by a capable person of a right known by him to exist, with the intent that he shall forever be deprived of its benefits. It may occur when one, with full knowledge of the material facts, does something which is inconsistent with the right or his intention to rely upon it. *Sirmon v. Roberts,* 209 Ark. 586, 191 S. W. 2d 824. In the cited case, we said that conduct amounting to waiver should be carefully inspected and all evidence upon the subject impartially scrutinized. In *Southark Trading Co. v. Pesses,* 221 Ark. 612, 254 S. W. 2d 954, where a recoupment of damages was allowed, the appellant argued that

the appellees had waived all rights for damages by making payments on a purchase price partially represented by notes on which the suit was brought. We held that in order to invoke the rule of waiver in such cases the affirmance of the contract must be equivalent to ratification and that it is essential that it be shown that the defrauded party intentionally condoned the fraud, affirmed the contract and abandoned his right to recover damages for the loss resulting from the fraud. See also, *Cockrum* v. *Pattillo,* 246 Ark. 594, 439 S. W. 2d 632.

Appellant relies upon such cases as *Advance Aluminum Casting Corp.* v. *Davenport,* 224 Ark. 440, 274 S. W. 2d 649; *Pate* v. *J. S. McWilliams Auto Company,* 193 Ark. 620, 101 S. W. 2d 794; *West* v. *Carter,* 235 Ark. 970, 363 S. W. 2d 415. In the first case, although the purchaser made only one payment on the purchase contract, he made no complaint of any kind to the seller for seven months after discovery of the defects in the merchandise involved. In the second, monthly payments were made for at least six months after the discovery of the alleged fraud before any complaint was made. In *West,* rejection of the plea of waiver was sustained where the purchaser made repeated complaints and continued payments only after the seller promised to repair the allegedly defective merchandise. In virtually all such cases, the evidence concerning waiver was undisputed. Of course, when reasonable minds could not differ as to the inferences to be drawn from the conduct relied upon, a determination that there was or was not a waiver as a matter of law is proper. Otherwise, the question is one of fact to be determined by the jury. *Lary* v. *Young,* 13 Ark. 401, 58 Am. Dec. 332. See also, 31 C. J. S. 788, Estoppel § 163. According to the testimony of appellee and his wife, considered in the light most favorable to him, it may well be that only one payment was made between the discovery of the fraud and the filing of the suit, and during that interval Moore was debating his future course of action. These circumstances were sufficient to make the question of waiver one for the jury, so there was no error in the refusal of a directed verdict.

Appellant's argument that the proof of fraud must be clear and convincing is based upon the premise that

the fraud charged is contradictory of the written vehicle buyer's order signed by appellee, citing *Belew v. Griffis,* 249 Ark. 589, 460 S. W. 2d 80. The order contains an acknowledgement that no warranties were made by the dealer. Appellant contends that the alleged representations as to the mileage traveled by this vehicle contradicted that instrument. In *Belew,* however, the alleged representation related to the total amount required to pay the deferred purchase price and was clearly contrary to the recited consideration in a deed. Clear and convincing evidence of fraud is required to cancel or reform a solemn writing, but not to establish fraud in obtaining a contract by fraudulent misrepresentation. *Clay v. Brand,* 236 Ark. 236, 365 S. W. 2d 256; *Parker v. Johnston,* 244 Ark. 355, 426 S. W. 2d 155. The instruction given was correct since the written instrument involved contained no statement about the vehicle mileage.

The questions pertaining to the award of punitive damages are not presented as clearly as they might be as an instruction complained of by appellant is not abstracted. The major issue, however, pertains to the propriety of permitting the jury to consider the question of exemplary or punitive damages. Appellant argues that its conduct was not characterized by either wilfulness and malicious conduct or gross fraud required as a basis of such damages. Particular emphasis is given to the facts that appellant's salesmen readily gave appellee the name of the owner of the vehicle from whom they acquired it and from whom appellee eventually learned that the mileage was considerably greater than that registered on the vehicle odometer and that appellee himself had once dealt in used cars.

We have said that before punitive damages may be awarded, it must be shown that there was a wanton disregard for the rights and safety of others on the part of the tortfeasor. *Nance v. Cook,* 240 Ark. 336, 399 S. W. 2d 262. According to one text a recovery of exemplary or punitive damages in an action based on a fraudulent sale, generally speaking, will be allowed only where the fraud is an aggravated one, as where it is malicious, deliberate, gross or wanton. 37 Am. Jur. 466, Fraud and

Deceit § 347. It is also said that, in ordinary cases, recovery of exemplary damages will not be allowed in an action of deceit unless the wrong involves violation of a duty springing from a relation of trust and confidence, or the fraud is gross, or there are extraordinary or exceptional circumstances clearly indicating malice and wilfulness, as exists when it appears that the tortfeasor acted with a deliberate intent to injure the one defrauded. 37 C. J. S. 489, Fraud § 144. We denied the allowance of exemplary damages in *C. R. I. & P. Ry. Co.* v. *Whitten*, 90 Ark. 462, 119 S. W. 835, 21 Ann. Cas. 726, a negligence action, saying that before a verdict for exemplary damages is justified, the party to be charged must be guilty of wilfulness, wantonness, or conscious indifference to consequences from which malice will be inferred. We said:

> Here the motive of the injuring party becomes material. Mere negligence, indifference, or careless disregard of the rights of others is not sufficient upon which to base a recovery for exemplary damages. The acts must be such as to evince malice. It is true that in law malice is not necessarily personal hate. It is rather an intent and disposition to do a wrongful act greatly injurious to another.

This posture with reference to the type of conduct upon which an award of punitive or exemplary damages may be founded is quite similar to that of the courts of other jurisdictions which have sustained verdicts for such damages founded upon representations based on false mileage readings resulting from a seller's action in turning an odometer back. In *Williams* v. *Miller Pontiac Co.*, 409 S. W. 2d 275 (Mo. App. 1966) and in *District Motor Co.* v. *Rodill*, 88 A. 2d 489 (D. C. Mun. App. 1952) it was held that by malice the courts simply had in mind the accepted theory of the intentional doing of a wrongful act without just cause or excuse. In *J. Truett Payne Company* v. *Jackson*, 281 Ala. 426, 203 So. 2d 443 (1967), it was held that if the misrepresentation is made with knowledge of its falsity or so recklessly as to amount to the same thing, or with the purpose of injuring the buyer, punitive damages could be awarded. Cf., *Boise*

*Dodge, Inc.* v. *Clark*, 92 Idaho 902, 453 P. 2d 551 (1969); *Lewis* v. *Worldwide Imports, Inc.*, 238 Or. 580, 395 P. 2d 922 (1964).

If, then, there was evidence tending to show that appellant intentionally performed a deliberate act with the intention of misleading a prospective purchaser about a material matter to his injury, it was proper to permit the jury to consider the award of exemplary or punitive damages. There is really no serious contention here that appellant or its employees did not turn the odometer back to reflect a reading several thousand miles less than the correct mileage. By so doing, appellee was led to believe, and says that he was actually told by appellant's salesman, that this reading represented the actual mileage the truck had been driven. Furthermore, the evidence appears undisputed that the dealer's salesman assured Moore that he would have the benefit of the balance of the manufacturer's warranty which covers a period of either five years or 50,000 miles of travel, depending upon which causes the earlier termination. The transfer of warranty was approved. The former owner testified that appellant gave him a bad trade allowance for the truck because of the actual mileage. The only motive an automobile dealer could possibly have in turning back an odometer on a vehicle is to make it appear that the vehicle had only been driven the distance shown by the changed reading. It does not seem that any plausible argument could be advanced that such an act was not done in a deliberate attempt to deceive any prospective purchaser about a material matter to his injury and to the advantage of the seller. When such action is accompanied with an actual representation that the reading was correct, there can be no doubt that the trial court should properly permit the jury to consider the allowance of exemplary damages.[1] We do not agree with appellant that the giving of the former owner's name to appellee afforded him such an opportunity to obtain accurate information contrary to that given by appellant as would bar allowance of punitive damages, as a matter of law, even when the buyer had dealt in used cars some years ago, when appellant might

[1]See cases from other jurisdictions cited above.

have been expected to have possessed peculiar knowledge on the subject. *Hutchinson* v. *Gorman,* 71 Ark. 305, 73 S. W. 793; *Clay* v. *Brand,* 236 Ark. 236, 365 S. W. 2d 256. See also, *Hunt* v. *Davis,* 98 Ark. 44, 135 S. W. 458; *Joe Lyons Machinery Co.* v. *Wiegel,* 168 Ark. 572, 271 S. W. 333. The question whether the means of information as to the true facts were equally accessible to the parties was an issue of fact. See *Cochran* v. *People's Exchange Bank,* 176 Ark. 830, 4 S. W 2d. 515.

The argument that appellant should not be liable for punitive damages for acts of its agents and servants, unless ratified or authorized cannot be sustained. It was rejected in *Miller* v. *Blanton,* 213 Ark. 246, 210 S. W. 2d 293, 3 A. L. R. 2d 203. There, we held that a corporation may be held liable for exemplary or punitive damages for such acts of its agents or servants acting within the scope of their employment as would, if done by an individual acting for himself, render him liable for such damages.

We do not feel that the award in the amount of $5,000 was so great as to shock the conscience of the court or to indicate passion and prejudice upon the part of the jury, since there was sufficient evidence to support a finding of legal malice. While there is no doubt that the amount is liberal insofar as the individual buyer is concerned, compensation of a plaintiff is not the purpose of exemplary or punitive damages and an award may be somewhat of a windfall to him. *Dunaway* v. *Troutt,* 232 Ark. 615, 339 S. W. 2d 613. They are the penalty the law fixes for conduct which is malicious, wanton, in violation of a relationship of trust or confidence, or which is done with a deliberate intent to injure another. The penalty must be not only a punishment sufficient to deter similar conduct on the part of the particular tortfeasor, it must also be sufficient to deter others who might be inclined to engage in such conduct to the injury of others. *Holmes* v. *Hollingsworth,* 234 Ark. 347, 352 S. W. 2d 96; *Vogler* v. *O'Neal,* 226 Ark. 1007, 295 S. W. 2d 629, 62 A. L. R. 2d 832; *Miller* v. *Blanton,* supra.

In considering the amount awarded here, we recognize that there is no fixed standard for measurement of such damages and that their amount lies largely within the discretion of the jury on due consideration of the attendant circumstances. *Vogler* v. *O'Neal,* supra. The jury in this case apparently found that the circumstances were such as to indicate a deliberate wrong by a practice which, if followed by dealers generally, would lead to widespread commercial fraud through which literally thousands of purchasers of used cars, including many who could least afford a loss, could be victimized by extraction of excessive prices, without having adequate means of ascertaining correct information or of pursuing a remedy for actual damages, which might not even be large enough to justify the expenditure of the money and time involved in seeking their recovery. It seems to us that the jury verdict may be said to evidence a legitimate concern for the possible consequences of such a practice to the consuming public generally, rather than passion and prejudice.

In considering the amount of the award in the light of its function as a deterrent, we find appropriate the following language of Judge Fuld speaking for the New York Court of Appeals in *Walker* v. *Sheldon,* 10 N. Y. 2d 401, 223 N. Y. S. 2d 488, 179 N. E. 2d 497 (1961):

> Exemplary damages are more likely to serve their desired purpose of deterring similar conduct in a fraud case, such as that before us, than in any other area of tort. One who acts out of anger or hate, for instance, in committing assault or libel, is not likely to be deterred by the fear of punitive damages. On the other hand, those who deliberately and coolly engage in a far-flung fraudulent scheme, systematically conducted for profit, are very much more likely to pause and consider the consequences if they have to pay more than the actual loss suffered by an individual plaintiff. An occasional award of compensatory damages against such parties would have little deterrent effect. A judgment simply for compensatory damages would require the offender to do no more than return the money which he had taken from the plaintiff. In the calculation of his

expected profits, the wrongdoer is likely to allow for a certain amount of money which will have to be returned to those victims who object too vigorously, and he will be perfectly content to bear the additional cost of litigation as the price for continuing his illicit business. It stands to reason that the chances of deterring him are materially increased by subjecting him to the payment of punitive damages.

In considering the very argument advanced by appellant as to the apparently disproportionate award of actual and punitive damages, in a case involving a recovery based upon a false odometer reading, the Idaho Supreme Court had this to say in *Boise Dodge, Inc. v. Clark*, 92 Idaho 902, 453 P. 2d 551 (1969):

The amount of actual damages sustained by a plaintiff is one indication of the culpability of the defendant's acts, but it cannot be the sole criterion for the assessment of punitive damages. Also relevant is the prospective deterrent effect of such an award upon persons situated similarly to the defendant, the motives actuating the defendant's conduct, the degree of calculation involved in the defendant's conduct, and the extent of the defendant's disregard of the rights of others. These are legitimate concerns of the law, and the application of any fixed arithmetic ratio to all cases in which punitive damages are assessed would be arbitrary.

Even if we should declare that our law required a reasonable relationship between compensatory and exemplary damages, we agree that other considerations are of equal importance, and, in this case, must have been considered by the jury. Not only can we not say that the jury was motivated by passion and prejudice, we cannot say that this award is excessive when we consider the dual purpose of exemplary or punitive damages.

Appellee's motion for taxing costs of abstracting is denied.

The judgment is affirmed.

Chief Justice Harris and Justices Brown and Jones would reduce the award of punitive damages to $2,500.