COCHRAN v. PEOPLE'S EXCHANGE BANK.

Opinion delivered April 2, 1928.

1. SALES—FRAUDULENT REPRESENTATIONS.—In order to vitiate a contract of sale on the ground of fraudulent representations, they must relate to an existing fact material to the contract upon which the other party has a right to rely and did rely to his injury.

2. SALES—FRAUDULENT REPRESENTATIONS—MEANS OF INFORMATION. If the means of information as to the matters alleged to be misrepresented in a sale are equally accessible to both parties, they will be presumed to have informed themselves, and, if they have not done so, they must abide by consequences of their own carelessness.

3. APPEAL AND ERROR—CONCLUSIVENESS OF CHANCELLOR'S FINDINGS.— Where the evidence is evenly poised, or so nearly so that the Supreme Court is unable to determine in whose favor the preponderance lies, the chancellor's findings of fact are conclusive on appeal.

4. SALES—FRAUDULENT REPRESENTATIONS.—In a suit to recover the price of mill machinery and to foreclose a mortgage thereon, evidence that defendants agreed to furnish the machinery as viewed by them at the place to which it had been hauled from the country, *held* to justify the chancellor's finding that they were not induced to purchase by representations as to the value and character of the parts, which they knew were missing when they purchased.

Appeal from Pope Chancery Court; *W. E. Atkinson,* Chancellor; affirmed.

STATEMENT OF FACTS.

Appellee brought this suit in equity against appellants to recover judgment for an amount alleged to be due them and to foreclose a mortgage on lands and machinery given to secure said indebtedness. Appellants defended the suit on the ground that the mortgage was given to secure the purchase price of certain mill machinery purchased by them from appellee, and that the sale had been induced by fraudulent representations.

L. B. McClure, vice president and manager of appellee bank, was a witness for it. According to his testimony, in May, 1923, R. H. and J. P. Cochran procured a loan from his bank in the sum of $800, and gave a

mortgage on certain mill machinery and real estate situated in Pope County, Arkansas, to secure it. Six hundred dollars of the amount borrowed was to be applied in payment of a sawmill upon which appellee had a second mortgage, and the remaining $200 was to be used in operating expenses of the sawmill. B. F. Harris had a first mortgage on the sawmill outfit, which belonged to B. F. Roof. The Cochrans came to the witness, and told him they were interested in the purchase of the sawmill. McClure sent him to Harris, who had charge of the Roof mill at that time. Roof had turned the mill over to Harris to sell for him. Harris had hauled the mill from its location near Gum Log, in Pope County, to his place on the north side of Russellville. McClure told Cochran to go and look at the mill before he purchased it. Cochran did so, and agreed to pay $600 for the mill if appellee would let him have $200 additional for operating expenses. Appellants gave appellee a mortgage on the sawmill they were purchasing and on one in operation, and also on a tract of land which they had purchased from W. P. Ferguson, on which they owed $477.50. Appellee subsequently paid off the amount due Ferguson on the mortgaged land.

B. F. Harris was also a witness for appellee. According to his testimony, he had a first mortgage on the mill machinery owned by Roof, and appellee had a second mortgage. Roof asked Harris to sell the machinery for the purpose of paying off the mortgage to the bank. The machinery was at Moreland, in Pope County, Arkansas, and was so located that Harris was unable to sell it. After talking with L. B. McClure, Harris had the machinery hauled to his place near Russellville for $20. The Cochrans came out there to look at the machinery, and asked Harris what it was worth. Harris told them it was worth $600, but that whatever they could do with McClure was all right with him. Harris told the Cochrans that he was selling the machinery to them just as they saw it. He told them that if there were any addi-

tional parts of the machinery at Moreland, he would get them for them, but that he was only selling them what they saw. He turned over to them all the saws, belts and pulleys which he showed them. They did not haul the machinery away for two or three months after they bought it.

According to the testimony of B. F. Roof, he authorized B. F. Harris, who held the first mortgage on the machinery, to sell it for him. Harris made the sale of the machinery, and was paid a commission for selling it.

According to the testimony of R. H. Cochran, he purchased the machinery from L. B. McClure, and McClure represented to him that he had a complete sawmill outfit, but that Harris only showed him the engine and part of a saw rig and a boiler. The governor, steam gauge, lubricator, lead pipes, lead-pipe fittings and flanges were not there. These parts were a material inducement for making the purchase, and they were never turned over to the witness. Two members of the Cochran family testified to substantially the same state of facts. Two other members of the same family testified that they were employed by appellants to haul the machinery for them, and that the governor, steam gauge, certain belts and lead pipes could not be found, and were not hauled and delivered by them to appellants.

The chancellor found the issues in favor of appellee, who was plaintiff in the court below; and from a decree in appellee's favor the appellants, defendants and cross-complainants in the court below, have duly prosecuted this appeal.

*Strait & Strait,* for appellant.

*Ward & Caudle,* for appellee.

HART, C. J., (after stating the facts). Counsel for appellants seek to reverse the decree upon the ground that the sale of the machinery to appellants was procured by the false representations of L. B. McClure, vice president and manager of appellee bank. In order to vitiate a contract of sale on the ground of fraudulent

representations, such representations must relate · to an
existing fact material to the contract, and upon which the
other party had a right to rely, and did rely to his injury.
If the means of information as to the matters alleged to
be misrepresented are equally accessible to both parties,
they will be presumed to have informed themselves; and
if they have not done so, they must abide by the conse-
quences of their own carelessness.  *Bankers' Utilities
Co., Inc.,* v. *Cotton Belt Savings & Trust Co.,* 152 Ark.
135, 237 S. W. 707; and *Manzil* v. *White,* 161 Ark. 1, 255
S. W. 567.

Thus it will be seen that the issue raised by the
appeal is entirely one of fact; and, in determining issues
of fact in chancery cases, where the evidence is evenly
poised, or so nearly so that we are unable to determine
in whose favor the preponderance lies, the findings of
fact by the chancellor are persuasive.  In short, the find-
ings of fact by the chancery court stand upon appeal,
unless they are clearly against the preponderance of the
evidence.  *Leach* v. *Smith,* 130 Ark. 465, 197 S. W. 1160.

In the application of this rule to the facts in the
record, viewed in the light of the attendant circumstances,
it cannot be said that the findings of fact made by the
chancellor are clearly against the weight of the evidence.
Appellants were experienced sawmill men, and were
shown the sawmill outfit before they purchased it. Harris
and McClure both testified that they agreed to purchase
the sawmill outfit as viewed by them.  The machinery
composing the sawmill outfit had been hauled from its
location in the country and stored at the residence of
the witness Harris, who held a first mortgage on it.
Appellants saw the outfit before they purchased it.  They
now claim that certain parts were missing when they
hauled it away.  They claim that they asked about the
missing parts, and that Harris promised to get them up.
Appellants knew the missing parts were not with the
other parts and that the parts examined by them had
been hauled into town from their location somewhere

in the country. It is not reasonable to think that they were induced to make the purchase by the representations of Harris and McClure as to the value and character of the parts which they now claim are missing. They saw the most valuable parts of the sawmill outfit, and it is more in accordance with reason and human experience that they purchased the machinery relying upon the value of the parts which were shown to them and which they examined before making the purchase. In addition they secured the sum of $200, which they claim they were to use in operating expenses.

We think the chancellor was justified in finding that the facts of the case bring it within the principles of law above announced, and it follows that the decree should be affirmed. It is so ordered.