In re John Lanning WOODHULL, III and Peggy Woodhull.

Charlotte BUCK, Plaintiff,

v

John Lanning WOODHULL, III and Peggy Woodhull, Defendants.

LR. No. 82–409.
AP. No. 82–592.

United States Bankruptcy Court, E.D. Arkansas, W.D.

Feb. 7, 1983.

R. David Lewis, Little Rock, Ark., for plaintiff.

George Vena and Frederick Wetzel, III, Little Rock, Ark., for defendants.

## FINDINGS OF FACT, CONCLUSIONS OF LAW, AND FINAL JUDGMENT DENYING PLAINTIFF'S COMPLAINT OBJECTING TO DEFENDANT'S DISCHARGE IN BANKRUPTCY AND DENYING PLAINTIFF'S PRAYER FOR A DECREE OF NONDISCHARGEABILITY

DENNIS J. STEWART, Bankruptcy Judge.

Plaintiff has filed a complaint requesting, in substance, a decree of nondischargeability with respect to a liability alleged to have been created by the defendant's fraud as to the condition of the sewage system on property sold by her to the plaintiff and an order denying the defendant's discharge in bankruptcy for failure to schedule certain matters in her petition for relief. The action came on for hearing before the court of bankruptcy for a hearing of its merits on December 8, 1982, whereupon the plaintiff appeared personally and by R. David Lewis, Esquire, her counsel, and the defendant appeared personally and by counsel, George Vena, Esquire and Frederick Wetzel III, Esquire. The evidence then adduced demonstrated the following facts:

The defendant retained a real estate broker to act as her agent in selling certain real property. There is no evidence generally as to the scope of the broker's authority nor, particularly, whether the broker had authority to make representations concerning the condition of the property. The broker made representations to the plaintiff, in inducing her to purchase the property, to the effect that the sewage system was in good working condition when in reality it was not. The only specific and explicit misrepresentation alluded to is that the agent misrepresented a hole in the ground in a nearby "clump of weeds" to be a septic tank. After she purchased the property, the plaintiff, according to the uncontradicted evidence, had to expend the sum of $7,000.00 in order to get the sewage system into working condition.

A state court issued a judgment against the defendant, Peggy Ruth Woodhull, in the sum of $26,760.12 and in favor of James Osburn, the administrator of the estate of the father of Peggy Ruth Woodhull. The judgment was in substance based upon a finding of that court that Peggy Ruth Woodhull had been given certain funds by her father to hold as a trustee for his surviving children. The money had not been turned over to the administrator at the time of Peggy Ruth Woodhull's filing her petition for relief under Title 11 of the United States Code. But Peggy Ruth

Woodhull did not schedule these funds as property held for another on her petition, even though a blank space for such scheduling was provided on the form which she used.

In the course of her testimony in the hearing of this action, the defendant also stated that from the funds which she initially was given to hold as trustee, she gave $17,000.00 or $18,000.00 to her father and $2,000.00 to her mother.

## Conclusions of Law

On the basis of the foregoing facts, the plaintiff contends she is entitled to the following relief: (1) a decree of nondischargeability under § 523(a)(2) of the Bankruptcy Code for the $7,000.00 expended by her in repairing the sewage system as a liability created by the fraud of the defendant's agent, and (2) an order denying defendant's discharge in bankruptcy for her failure to schedule property held as trustee and for failure to schedule the money paid to her father and mother, respectively.

The complaint for a decree of nondischargeability must, under the foregoing facts, be denied. It is, of course, well established that a principal is responsible for the misrepresentations of his agent made within the scope of his authority. In this action, the evidence does not establish that the agent had any authority to make representations concerning the condition of the property.

It is generally held that principals are liable for the misrepresentations of their agents made within the scope of the agent's authority. "The general rule is well settled that a principal is responsible for his agent's fraud in effecting a sale. Although there is some authority to the contrary where the agent's authority is limited or restricted, the prevailing view is that a seller or vendor is responsible for the fraudulent representations of his agent in making an authorized sale even though the seller or vendor did not participate in, know of, or sanction, such representations." 37 Am. Jur.2d, *Fraud and Deceit* § 316, pp. 417–418

(1968). There is authority to the contrary. "Where an agent is employed only to procure a purchaser for property, it has been held in a number of cases that his principal, the vendor, is not liable for the agent's misrepresentations regarding the character, condition, location, quality of, or title to, the property." *Id.,* p. 418, n. 3. And "there are cases to the effect that a vendor is not bound by the false representations of his agent where he did not know that such representations were untrue, or where he did not know that his agent had made them." *Id.,* n. 4. Under some holdings, in the absence of a particular agreement enlarging his authority, a real estate broker is a special agent only and has no power to make his principal liable for his misrepresentations. *Pleasant Grove Builders, Inc. v. Phillips,* 355 S.W.2d 818 (Tex.Civ.App.1962). In this action, although the paucity of evidence makes this question a close one, this court must conclude that the evidence shows that the real estate agent had apparent authority to make representations concerning the condition of the property. The fact of defendant's making the real estate agent her agent for the purpose of selling the property must be inferred from the uncontradicted evidence of her appearance as the seller (or seller's representative) at the closing of the real estate contract. And therefore an inference of the agent's general authority, including the authority to make representations concerning the property's condition. Under the law of the State of Arkansas, it appears that, if the defendant placed the agent in a position to exhibit the apparent authority to make representations concerning the condition of the property, then she is liable for any fraudulent representation, regardless of the ambit of actual authority. Cf. *McCarroll Agency v. Protectory for Boys under Care of Franciscan Bros. of Cincinnati, Ohio,* 197 Ark. 534, 124 S.W.2d 816 (1939).

Furthermore, if there was in fact fraud by the agent the absence of his authority appears to be unavailing when the principal has kept the proceeds of the fraud and benefitted thereby. "It is fundamental that a principal cannot retain the fruits of

**86**

his agent's fraud without being responsible for it." 37 Am.Jur.2d *Fraud and Deceit* § 311, p. 412 (1968).

■ The question remains, however, whether, according to the evidence before the court, the agent committed such fraud as will create a nondischargeable liability. As noted above, it was the testimony of the plaintiff, Charlotte Buck, that, while she was physically present on the property in question, the agent indicated a hole in the ground in a "clump of weeds" and stated that it was a septic tank. At the time of the representation, according to the evidence, this hole was within sight and there is nothing to indicate that it was, in fact, any more than a hole. It was, according to the evidence, fully open to plaintiff to inspect the hole at closer range and see, as she allegedly found out only later, that it was only a hole with no metal or concrete perimeters. Thus, it was fully within her opportunity and power in fact to inspect the hole and then discover that, according to all outward and plain appearance, it could not be a septic tank. The general authority on such circumstances is that the fraudulent statement as to condition of the premises cannot be said to have been relied upon when it is open to plaintiff to discover such a patent and unobscure defect. "[F]raud may rest upon a misrepresentation in the form of a positive statement of fact . . . [that the land is in good condition], *where the representee at the time is unable to determine from its appearances whether it is or not . . .*" *Id.,* § 106, pp. 151–152. "[I]t is well agreed that where the means of knowledge are at hand and are equally available to both parties, and the subject matter is equally open to their inspection, if one of them does not avail himself of those means and opportunities he will not be heard to say that he was deceived by the other's misrepresentations." *Id.,* § 248, p. 331. "Clearly, where the facts as to which a seller makes false representations are so plain as to be obvious to the buyer or easily observed by the most casual inspection, it

has been held that the buyer is charged with notice of such facts, and cannot avail himself of the misrepresentation." 37 Am. Jur.2d *Fraud and Deceit,* § 251, p. 335 (1968). "If the means of information as to the matters alleged to be misrepresented are equally accessible to both parties, they will be presumed to have informed themselves, and if they have not done so, they must abide by the consequences of their own carelessness." *Cochran v. Peoples' Exchange Bank,* 176 Ark. 830, 4 S.W.2d 515 (Ark.1928).

■ Further, there is no evidence in this action that the attributable misrepresentation of the agent was anything but negligent. There is no evidence that the agent knew, in fact, when he made the misrepresentation that the plain hole was in fact not a septic tank. The law of nondischargeability does not except liabilities created by negligent or nonwilful misrepresentation from discharge in bankruptcy. "[T]o bar a discharge, the party alleging fraud must prove actual or positive fraud . . . involving moral turpitude or intentional wrong." *In re Taylor,* 514 F.2d 1370, 1373 (9th Cir.1975). The plaintiff has the burden of showing that:

"... (1) the debtor [or his authorized or apparent agent] made the representations; (2) that at the time he knew they were false; (3) that he made them with the intention and purpose of deceiving the creditor; (4) that the creditor relied on such representation; and (5) that the creditor sustained the alleged loss and damage as the proximate result of the representations having been made."

*Sweet v. Ritter Finance Co.,* 263 F.Supp. 540, 543 (W.D.Va.1967). It can be seen that, in this action, none of these elements are made out by the evidence. Nor is there any evidence that the debtor herself knew of the alleged misrepresentation or knew that it was false.

■ Similarly, in order for the failure of a debtor to schedule property or transac-

tions to constitute a ground for denial of discharge, it must be done knowingly and with fraudulent intent.[1] That element is not shown by the facts of this case. Further, in respect of the debtor's failure to schedule any money or property held in trust for other persons, the evidence does not demonstrate that the defendant had the money in her possession as of the date of bankruptcy. Therefore, her schedules may not even have been incorrect in this regard. And it is not shown that the monies transferred to her father and mother were transferred within a year of bankruptcy, the time period to which the question on the form of petition utilized by the debtor addresses itself.

Further, according to the existing authority on the subject of a denial of discharge in bankruptcy, even if a ground for discharge exists (and, in this case, for the foregoing reasons, it does not), it is still within the discretion of the court to grant or deny a discharge.[2] In this case, the facts before the court do not warrant the denial of a discharge in bankruptcy.

It is therefore, accordingly,

ORDERED, ADJUDGED AND DECREED that the plaintiff's complaint for denial of discharge and a decree of nondischargeability be, and it is hereby, denied.

---

1. "The requisite intent being present, failure to list property ... may constitute a false oath. But if items were omitted by mistake or upon honest advise of counsel ... discharge should not be denied because of it." 4 Collier on Bankruptcy, Paragraph 727.04, pp. 727–53, 727–54 (1982).

2. *In Re Brown,* 314 F.Supp. 947 (E.D.Mo.1970), affirmed, 444 F.2d 49 (8th Cir.1971).